CASE 44.—ACTION BY MARY J. MORGAN AGAINST THE CHESAPEAKE & OHIO RY. CO AND ANOTHER TO RECOVER DAMAGES FOR PERSONAL INJURIES. —December 5.

127
s129

433
735

# Morgan v. Chesapeake & Ohio Ry. Co., &c.

Appeal from Lewis Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for defendants, plaintiff appeals—Reversed.

1. Carriers—Injuries to Passengers—Foreign Cars—Defects—Duty of Carriers.—Where a passenger was injured by the breaking of an axle on a foreign car being transported as part of a train, due to a sand hole in an axle, and there were tests known to car builders and iron moulders, by which such defects might be discovered before the materials were incorporated into the car, the manufacturer's negligent failure to make such tests would be imputed to the transporting carrier, under the rule that the carrier is liable for all defects in his vehicle existing at the time of construction, as well as those which may exist afterwards, and be discovered on investigation.

2. Same—Res Ipsa Loquitur.—Where a passenger proved his injuries as the result of a breakage in one of the cars of a train in which he was riding, the carrier, in order to defeat a recovery, must show, not only that it was due to a cause or causes which the exercise of the utmost human skill and foresight could not prevent, but that, if the accident was due to a latent defect in the material or construction of the car, it could not have been discovered either by the carrier or the builders by the exercise of such care.

3. Same—Mixed Trains.—Carriers operating mixed trains for the carriage of passengers are under precisely the same duty as regards the safety of their cars from defects as where the passengers are carried only on passenger trains.

vol. 127—28

4. Trial — Requested Instruction — Conformity to Issues. — A charge in an action for injuries to a passenger from a broken axle, regarding the assumption of additional risk by plaintiff when riding on mixed trains, should not have been given where there was no question of the ordinary additional risk on mixed trains involved in the case.

ALLAN D. COLE for appellant.

W. H. WADSWORTH and LEWRIHT BROWNING for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

Appellee Chesapeake & Ohio Railway Company controls and operates a short branch line in Lewis and Carter counties, known as the "Kinniconick & Free Stone Railroad." It runs only mixed freight and passenger trains on the line. Appellant was a passenger on one of these trains. A loaded freight car of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, which was being hauled in this train was derailed by a broken axle, it is said, wrecking the passenger coach in which appellant was riding, inflicting injuries upon her which she claims were painful and impaired her power to earn money. The axle broke because of a latent fault, a sand hole, caused by the sand used in moulding the axle being accidently taken into the molten metal. The spot occupied by the sand, if within the axle, is entirely undiscoverable by any kind of visual inspection, and in proportion to its area necessarily weakens the axle. If the derailment of the car in this instance was due to the circumstance of the defective axle, it illustrates just how dangerous such a defect may be. The question for decision on this point is: What was the extent

of the carrier's duty with respect to a car forming part of a train on which it carried passengers?

The language usually employed in defining the measure of the carrier's duty is that "a common carrier of passengers is bound to provide for their safety so far as human care, skill, and foresight are capable of securing that end." But the question recurs, then: When is this duty discharged? Is a carrier which takes the car of another company into its passenger train excused from liability to its passenger resulting from hidden defects in such car when it shows that they were not discoverable by the ordinary methods of inspection available and practicable as to a car upon the tracks? Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141, was a case where a passenger had been injured by a defect in a Pullman car being hauled by the Pennsylvania Company in one of its trains. It sought to escape liability for the injury, upon the ground that it had no control over the car as to repairing it or keeping it in a safe condition, and particularly as to hidden defects in its construction. In the court's opinion, by Mr. Justice Harlan, it was said of the duty of the carrier: "These and many other adjudged cases, cited with approval in elementary treatises of acknowledged authority, show that the carrier is required as to passengers to observe the utmost caution characteristic of very careful, prudent men. He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance, aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the

passenger. Among the duties resting upon him is the important one of providing cars or vehicles adequate; that is, sufficiently secure as to strength and other requisites for the safe conveyance of passengers. That duty the law enforces with great strictness. For the slightest negligence or fault in this regard, from which injury results to the passenger, the carrier is liable in damages. These doctrines to which the courts, with few exceptions, have given a firm and steady support, and which it is neither wise nor just to disturb or question, would, however, lose much, if not all, of their practical value, if carriers are permitted to escape responsibility upon the ground that the cars or vehicles used by them, and from whose insufficiency injury has resulted to the passenger, belong to others. * * * The law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company whose cars are used by the railroad company, and constitute a part of its train, to evade the duty of providing proper means for the safe conveyance of those whom it has agreed to convey.'' There is a very common custom of interchanging cars among railroads. The passenger has no option but to use the vehicles and the trains provided by the carrier for the transportation of the public. The railroad company may cause inspection to be made before putting the cars of another company into its trains, and, if it fails to do so, it will not be heard to say that the owner company was the one in fault in letting its car get into an unsafe condition. But here the defect in the visiting railway car was not observable by ordinary or even by extraordinary inspection after it came into appellee's custody. What, then, is the

rule? We think that a carrier of passengers is answerable in no less degree for the safe condition of the cars of other companies which it is using than for its own cars. Its duty to its passengers cannot be made to shift upon any such consideration, becoming lighter when the carrier employs other vehicles for its service than its own. It ought to be held, and will be held, to the same degree of care as to all cars and locomotives in its train, whether it owns them or not.

The suggestion is made that under the Constitution and laws of this State carriers are bound to take the cars of connecting lines, and to haul them on equal terms with its own cars; and that as it has not the opportunity for other tests or examination than the conditions afford—the car standing upon the track—it ought not to be held accountable for not discovering defects that were not discoverable by such methods of examination. This would impose on the carrier, as we shall see further along, less responsibility as to such cars than the law imposes as to the carrier's own cars. Such a rule is not consistent with that exacting standard which the law out of its tender regard for human life has erected for the protection of the traveling public. As intimated in Pennsylvania Co. v. Roy, supra, the owner of the defective car might and doubtless would be liable to reimburse the carrier who was compelled to respond in damages to its passenger injured because of such defects. At any rate, as between the three, the passenger, the carrier, and the owner of the car, the passenger's safety and the carrier's supreme duty are the matters of main concern to the law. The tendency is to exact more care, and not less, of carriers of passengers.

Hegeman v. Western R. Corp., 13 N. Y. 9, 64 Am. Dec. 517, was decided more than 50 years ago in the Court of Appeals of New York. There a passenger was injured by the car in which he was seated being wrecked through a defect in the axle. The company showed that it purchased the car from manufacturers in good repute, that it had been periodically inspected, and that it always appeared sound. The charge to the jury upon the trial was that although the defect was latent, and could not be discovered by the most vigilant external examination, yet, if it could be ascertained by a known test, applied either by the manufacturer or the defendant, the latter was liable. The court held there was no error in the instruction. It was there said: "It was said that carriers of passengers are not insurers. This is true. That they were not required to become melters of iron, or manufacturers of cars in the prosecution of their business. This also must be conceded. What the law does require is that they shall furnish a sufficient car to secure the safety of their passengers by the exercise of the 'utmost care and skill in its preparation.' They may construct it themselves, or avail themselves of the services of others; but in either case they engage that all that well-directed skill can do has been done for the accomplishment of this object. A good reputation upon the part of the builder is very well in itself, but ought not to be accepted by the public, or the law, as a substitute for a good vehicle. What is demanded, and what is undertaken by the corporation, is not merely that the manufacturer had the requisite capacity, but that it was skillfully exercised in the particular instance." In Sharp v. Gray, 9 Bing. 457, the carrier was held responsible for all defects in his vehicle which can be seen at the time of construction,

as well as for such as may exist afterward, and be discovered on investigation. If not, he might buy ill constructed or unsafe vehicles, and his passengers be without remedy. The same doctrine was approved in a carefully prepared opinion in Treadwell v. Whittier, 80 Cal. 575, 22 Pac. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175. And such we think must be the rule. The carrier, in consideration of certain well-known and highly valuable rights granted to it by the public, undertakes certain duties toward the public, among them being to provide itself with suitable and safe cars and vehicles in which to carry the traveling public. There is no such duty on the manufacturer of the cars. There is no reciprocal legal relation between him and the public in this respect. When the carrier elects to have another build its cars, it ought not to be absolved by that fact from its duty to the public to furnish safe cars. The carrier cannot lessen its responsibility by shifting its undertaking to another's shoulders. Its duty to furnish safe cars is side by side with its duty to furnish a safe track, and to operate them in a safe manner. None of its duties in these respects can be sublet so as to relieve it from the full measure primarily exacted of it by law. The carrier selects the manufacturer of its cars, if it does not itself construct them, precisely as it does those who grade its road, and lay its tracks, and operate its trains. That it does not exercise control over the former is because it elects to place that matter in the hands of the manufacturer, instead of retaining the supervising control itself. The manufacturer should be deemed the agent of the carrier as respects its duty to select the material out of which its cars and locomotives are built, as well as in inspecting each step of their construction. If there

be tests known to the crafts of car builders, or iron moulders, by which such defects might be discovered before the part was incorporated into the car, then the failure of the manufacturer to make the test will be deemed a failure by the carrier to make it. This is not a vicarious responsibility. It extends, as the necessity of this business demands, the rule of respondeat superior to a situation which falls clearly within its scope and spirit. Where an injury is inflicted upon a passenger by the breaking or wrecking of a part of the train on which he is riding, it is presumably the result of negligence at some point by the carrier. As stated by Judge Story, in Story on Bailments, section 601a: ''When the injury or damage happens to the passenger by the breaking down or overturning of the coach, or by any other accident occurring on the ground, the presumption prima facie is that it occurred by the negligence of the coachman, and the onus probandi is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent; for the law will, in tenderness to human life and limb, hold the proprietors liable for the slightest negligence, and will compel them to repel by satisfactory proofs every imputation thereof.'' When the passenger has proved his injury as the result of a breakage in the car or the wrecking of the train on which he was being carried, whether the defect was in the particular car in which he was riding or not, the burden is then cast upon the carrier to show that it was due to a cause or causes which the exercise of the utmost human skill and foresight could not prevent. And the carrier in this connection must show,

if the accident was due to a latent defect in the material or construction of the car, that not only could it not have discovered the defect by the exercise of such care, but that the builders could not by the exercise of the same care have discovered the defect or foreseen the result. This rule applies the same whether the defective car belonged to the carrier or not.

Able counsel for appellee contend that the rule in this State does not extend so far as is written above. No case has heretofore arisen in this State where the question was involved either as to the carrier's responsibility for the condition of cars not its own which it hauls in its trains, or as to defects occurring in the course of the manufacture of the cars constituting its trains. Nevertheless we will examine in this opinion the authorities relied upon by appellee. Kentucky Central R. R. Co. v. Thomas, 79 Ky. 160, 2 Ky. Law Rep. 114, 42 Am. Rep. 208, is cited. There the question was as to the duty of a railroad company, a common carrier, to equip its cars with Westinghouse air brakes At this day, less than 30 years after that case was decided, it may seem strange that a carrier of passengers was resisting the installment of that now indispensable appliance to railroad trains which has proved so valuable to both the carriers and the public. Yet in that case the plaintiff offered evidence conducing to prove that the Westinghouse air brake was more efficient in arresting the progress of a train than the brakes in use on the defendant's train on which the intestate was killed. The defendant objected to the evidence, and, it being admitted over its exceptions, that was assigned as error. Respecting the duty of railway carriers, the court laid down this rule, which we understand to be the same, differ-

ently expressed, as is restated in principle in this opinion: "They are bound to provide a road, engines, and cars free from all defects which endanger the lives of passengers, and which might have been discovered by the closest and most careful scrutiny of competent men, and to employ competent and trustworthy persons to operate and manage their roads, engines, and cars, but are not liable for casualties which human sagacity cannot foresee, and against which the utmost prudence cannot guard." Louisville Railway Co. v. Weams, 80 Ky. 420, 4 Ky. Law Rep. 287, involved the degree of care required of a driver of a mule car on a street railway. And it was there stated: "The rule is that a carrier of passengers for hire must use the utmost care and skill which prudent men are accustomed to use under like circumstances." The instruction condemned in that case was this: "The defendant as a carrier of passengers for hire was bound, as far as human foresight and care would enable it, to carry the plaintiff with safety," etc. But this court in Davis v. Paducah Light & Ry. Co., 113 Ky. 267, 26 Ky. Law Rep. 135, 68 S. W. 140, extended the rule laid down in the Weams Case, supra. The instruction then under consideration reads: "* * * It was the duty of the defendant company to have provided safe cars in a safe condition in which for passengers to ride in so far as human foresight and judgment by recent inspection could enable the company to know, or in good faith to believe, the cars in good condition by being inspected by a competent employe." The court refused to approve a substitution of good faith for a safe car. Instead, Shearman & Redfield's Negligence, section 495, was cited with approval, that there was exacted from a common carrier for hire the utmost care and

skill which prudent men are accustomed to use under similar circumstances. In that case the builder's negligence was not involved. The car had been allowed to fall into disrepair. In Louisville Ry. Co. v. Hartledge, 74 S. W. 742, 25 Ky. Law Rep. 152, also cited by appellee, the cause of the injury was not, so far as appears, in the condition of the car, but was some obstruction on the track. The court refused to reverse the judgment below, and did not undertake to define the full duty of the carrier to its passengers as to furnishing them safe cars in which to ride.

Finally, a question was made and submitted to the jury, respecting the assumption of additional risks by appellant in riding upon a mixed train. We do not think there was any place in this case for such an instruction. Carriers who operate mixed trains for carrying passengers are under precisely the same duty as regards the safety of their cars from defects as where they carry the passengers upon passenger trains. In Illinois Central v. Vinson, 74 S. W. 671, 25 Ky. Law Rep. 38, and C. & O. Ry. Co. v. Jordan, 76 S. W. 146, 25 Ky. Law Rep. 574, the instructions were predicated upon the evidence as to sudden jerkings of the trains, and in such cases there is an assumption by the passenger of such usual jerkings and jolts as are necessary and customary in starting and stopping prudently operated mixed trains; but no claim is made in this case for injury based upon such cause. The instruction should have been omitted.

The pleadings sufficiently present the questions discussed.

For the reasons given, the judgment is reversed, and cause remanded for a new trial under proceedings consistent herewith.