## Southern Railway Company in Kentucky v. Dugless.

(Decided March 24, 1916.)

### Appeal from Woodford Circuit Court.

1. Railroads—Trespassers.—An employe of a distillery company who uses a switch track in the yard of the company as a passageway, which passageway is habitually and constantly used by the employes of the distillery in going from one part of its plant to another, is not a trespasser on the switch track which is operated by a railroad company, but is a licensee.

2. Railroads—Contributory Negligence.—Such employe who emerges from a door of one of the distillery buildings only a few feet from the railroad track and looks each way to see if a train is coming, but who on account of a curve in the track which comes around the corner of the building near the door from which he has emerged, can see the track only a short distance, and has no notice of the presence of the train and steps upon the track, is not guilty of contributory negligence as a matter of law, and is entitled to have the question whether he was so guilty or not submitted to the jury.

3. Railroads—Lookout Duty.—The fact that the railroad company only used this switch generally once a day and then between the

hours of eleven and one in the day time, and that the distillery management had given orders that the door entering its main building near this passageway should be closed while trains were switching does not relieve the railroad company of the duty of maintaining a lookout when it is backing a train around this curve and across this passageway.

4. Railroads—Lookout Duty.—The lookout duty contemplated by the law is one that will be effective; and it was insufficient lookout for a brakeman to be on the railroad car as the train backed at such a place that he could not see the crossing, or that the engineer and fireman in the engine one hundred and seventy-five feet away around a curve were attempting to keep such lookout.

5. Railroads—Lookout Duty.—The fact that the distillery company maintained electric wires running over the switch more than five feet above the top of a freight car, and that there were certain other obstructions four or five feet above the top of a freight car, does not excuse the absence of a lookout, as a trainman might have with reasonable safety seated himself on the top of the freight car without being endangered by these obstructions. But in this case the lookout was not required by the instructions of the court to be on the car, but only in such position that he might discover the presence of persons on the track.

6. Railroads—Trespassers—Lookout Duty.—The court properly declined to instruct the jury that if they believed the plaintiff emerged from the door onto the railroad track in close proximity to the approaching train at a time when the operators in charge thereof did not know of and could not have known of his presence by the exercise of ordinary care in time to have stopped the train and prevented the accident that they must find for the defendant. That instruction ignored entirely the lookout duty owed by the defendant and in effect assumed that the plaintiff was a trespasser and the trainmen owed him no duty until they discovered his peril.

7. Appeal and Error—When Verdict Not Excessive.—A verdict for $15,000.00 is not excessive in favor of a laborer thirty-six years of age and earning $1.50 a day, who had his right leg cut off and his left foot and ankle crushed, who remained in the hospital seven weeks, who has earned nothing since the accident and whose earning capacity has probably been permanently destroyed, who is a hopeless cripple for life and has suffered intensely and will continue to do so as long as he lives.

WALLACE & HARRIS and EDWARD P. HUMPHREY for appellant.

ROBERT B. FRANKLIN and ROBERT C. TALBOTT for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

The main building of the Greenbaum distillery in Midway, Kentucky, is at the southeast corner of Gratz

and Dudley streets. The boiler room is located in the extreme eastern end of the main building, the north wall bordering on Gratz street and the south wall facing the yards or property of the company. In the south wall of the boiler room, and near the southeast corner of the main building, is a door ten feet wide and about eight feet high, which is operated by lifting and lowering. The south wall of the boiler room is seventeen inches thick and the door is on the inside of that wall.

Appellant's main track runs north and south through the distillery property, and at a point about one hundred and thirty-six feet northeast of the boiler room door the main track connects with a switch several hundred feet long which is operated by the railroad company, but is used chiefly in delivering freight to and taking freight from the distillery.

From the point where the switch leaves the main line for a distance of about two hundred and seventy-five feet the switch-track curves considerably to the west and is described in the evidence as being a sixteen degree curve or a curve of about two feet to the one hundred; at the point where it reaches the southeast corner of the main building and passes the south door of the boiler room it is still on this curve, and from the time it reaches the southeast corner of the main building it runs as close to the south wall of the main building throughout almost the entire length thereof as is consistent with its operation, the purpose being no doubt to enable cars to be loaded from or unloaded into the distillery.

The boiler room door is six feet three inches from the nearest rail of the switch track and only five feet and eight inches from the side of a passing car, and of this space seventeen inches is represented by the thickness of the wall, the door being on the inside thereof.

The appellee was on the 6th of January, 1914, an employe of the Greenbaum distillery, and on the morning of that day, between eleven and twelve o'clock, had occasion to go to the boiler room; he had been instructed to repair a certain hoe, and having gotten that while in the boiler room, started to leave through the south door; when he came to the door he found that it was partially down, being lifted from the concrete floor only about two and one-half or three feet, and instead of raising it higher he got down on his hands and knees and crawled under it. When he got under, of course, he was

right at or near the inside rail of the switch, and he says that as he was in the act of straightening up he looked first over his left shoulder toward the main track and then over his right shoulder to assure himself there was no danger, and started to cross the track; that because of the curve in the track at that point his vision was obstructed by the corner of the building and he could only see some eight or ten feet beyond that point, and that after he had gotten on the track he found the train, which was backing onto the switch, was right on him and he undertook to save himself by grabbing hold of something on the end of the car, but could not secure a good hold, and then the train struck him, ran over and amputated his right leg between the ankle and the knee and crushed his other foot and ankle.

He brought this suit for damages against the railway company, alleging that the injuries were the result of its negligence and that the place where he attempted to cross the switch was habitually used by the employes of the distillery company in going to and from the boiler room, and that this fact was known to the company and its agents and servants, and that it was therefore a place at which the presence of persons on the track was to be anticipated. The defendant in its answer denied negligence, denied that it was the owner of the switch track, and pleaded contributory negligence.

On the trial in the circuit court a verdict was returned for the plaintiff for $15,000.00 in damages, upon which judgment was entered, and the company has appealed.

The appellant claims that it was entitled to a directed verdict: First, because the evidence shows the appellee to have been a trespasser upon its tracks, to whom it owed no duty until after his peril was discovered; and, second, because, as claimed, the evidence showed the appellee to have been guilty of contributory negligence as a matter of law.

The evidence is that the employes of the distillery when the same was in operation, as it was on the 6th of January, 1914, habitually and constantly during the day used the switch track immediately in front of the boiler room door as a passway to and from that room; that the main distillery building was on one side of the switch track and several other distillery buildings on the other side, and in fact it was a necessity for the em-

ployes in going from one part of the plant to the other to use the switch track; that at the time appellee was injured he had with him the hoe which he intended to repair at the blacksmith shop or forge belonging to the company, which was on the other side of the switch track.

It is argued by appellant that where there is a private switch used by a railroad company only once a day, and then at a regular and fixed time, the fact that it was habitually used by large numbers of persons at other times of the day, and not at such fixed time, makes a person using it at the regular fixed time a trespasser rather than a licensee. The claim is that inasmuch as the company only used this switch once every day and then generally between eleven and one o'clock, and the distillery people had given orders that the door should be kept down while trains were switching, that the company should not be expected to anticipate the presence of persons on the track at that point during those hours.

In support of this view we are cited to the cases of Sou. Ry. Co. v. Sanders, 145 Ky. 679; L. & N. R. R. Co. v. Bayes' Admr., 142 Ky. 400; and Hoback's Admr. v. L. H. & St. L. R. R. Co., 30 K. L. R. 476. But an examination of those cases will disclose that they were each cases where parties were using the tracks of the railroad company in the late hours of the night, and it is merely held that even though it might be the duty of a company to anticipate at such places the presence of persons upon its track in day time, or at such reasonable hours as they were shown to customarily have used them, that no such duty rested upon it in the unusual hours of the night when in the regular order of things persons were not to be expected at such places.

In this case the evidence shows that at all times during the working hours of the day the employes of the distillery used this switch as a passageway to and from the boiler room, and failed to show any fixed time was given by orders of the distillery company when it should not be used as such other than that the door must be kept down when trains were switching. Appellee's evidence is that he had no notice that the train was switching, and that no signal was given indicating its approach to the passway.

The train which struck appellee consisted of an engine, tender and three freight cars, and at the time it was backing on the switch at the rate of six or eight

miles an hour around this curve; that no lookout duty was maintained as the train backed up the switch at the rear end thereof except that on the front end of the rear car and on the outside of the curve there was a brakeman, who says that he could not from his position have seen the appellee and did not see him. It is further shown that the conductor and another brakeman had preceded the train up the switch on foot and that neither of them had stayed at this point of danger to keep a lookout. There seems to be no doubt that at this point, so constantly used as a passageway, at a place around the corner of a building in this short curve, that an effective lookout duty was imperatively demanded, and it was insufficient that this brakeman, who was thirty or forty feet from the rear of the train, and in such position that he could not see this passageway, or that the engineer and fireman in the engine, one hundred and seventy-five feet away, around this curve, were attempting to keep such a lookout. It would be farcical to say, under the physical conditions existing at that place, that such a lookout was sufficient. The lookout contemplated by the law is one that will be effective, such as will keep in view the dangerous crossing. Not only so, but the decided weight of the evidence is that no warning or signal of any kind was given by this backing train as it came around that curve at the corner of the building, a place constantly used as a passageway during working hours.

The claim that the appellant was guilty of contributory negligence as a matter of law cannot be sustained. His own evidence is that he looked as far up the track as he could by reason of the curve and corner of the building before stepping on it; that no signal was given and he did not hear the rumble of the train and did not know of its approach, and certainly under the scintilla rule in this state this evidence authorized him to have submitted to the jury that question, and it was submitted in an instruction drawn by the attorneys of the appellant.

It is further insisted that because of the fact that the distillery company had certain electrical wires running into its building, something over five feet above the top of a freight car, and that because there were certain obstructions four or five feet above the height of a freight car at a set of scales operated by the company further up the switch track, that no lookout could have been

maintained on top of a freight car; but the evidence satisfactorily shows that a brakeman might have with reasonable safety seated himself on the top of a freight car without being endangered by these obstructions. Not only so, but the instructions of the court did not require of the company that it should have a lookout on the car at all, but only in such position that he could discover the presence of persons on the track. It was not at all necessary that the lookout should have been upon the car, and it is not at all improbable by reason of the physical facts that it would have been more effective on the ground.

The appellant strenuously insists that the court erred in not giving the following instruction offered by it:

"The court instructs the jury that if they believe from the evidence that the plaintiff, Wm. P. Dugless, came from the boiler or furnace room onto the railroad track in such close proximity to the approaching train at a time when the operators in charge of said train did not know of, or by the exercise of ordinary care on their part could not have ascertained his presence in time, by the exercise of ordinary care on their part to have stopped the train and prevented the accident, and that he received the injuries of which he complains, on account thereof, then even though they should believe the said operators were negligent under instruction No. 1, they ought to find for the defendant."

This instruction in effect would have been to say to the jury that if appellee emerged from the boiler room in close proximity to the train, even though there had been no signals, and even though no lookout duty had been kept, that if the trainmen had not discovered his presence in time to have stopped the train and prevented the accident they must find for the defendant; in other words, it was the equivalent of saying to the jury that the appellee was a trespasser and the trainmen owed him no duty until they discovered his peril. The instruction assumes that the appellee was a trespasser, which we have seen above he was not.

Manifestly the action of the court in declining to give this instruction was proper.

The instructions of the court as a whole fairly submitted the issues and are not open to any just criticism.

The evidence is that the appellee was thirty-six years of age at the time of the accident and a laborer earning

$1.50 per day; that he was confined to the hospital for seven weeks after his injury, has never been able to work since or earn anything, and gets around with great difficulty; that it is probable that another operation will have to be performed on his left foot, and that he is unquestionably a hopeless cripple for life; that his suffering has been of the most intense character, and that he will continue to suffer throughout his life.

Under these circumstances the argument is made that the verdict is excessive.

There is a decided modern tendency to uphold liberal verdicts in cases of serious injuries not resulting in death; the courts have shown an inclination to take into the estimate not only the destruction of earning power, not only the suffering endured and to be endured, but the fact that in such cases men are deprived of the privilege of enjoying life in any way or in any manner and are humiliated by being made hopeless charges upon their families and friends.

In American Annotated cases, 1913 A, page 1364, and in 1915 F, L. R. A. (N. S.) page 310, will be found a list of cases showing the damages held not to be excessive in cases where there was a loss of a leg in conjunction with other injuries.

An examination of those cases will disclose that in many of them where the injuries were less serious or no more so than in this case, much larger verdicts have been upheld.

It is a large verdict and it is a serious injury; we are unwilling to say that it is excessive under all the facts.

Judgment affirmed.