## L. & N. R. R. Company v. Epley.

(Decided May 30, 1924.)

### Appeal from Logan Circuit Court.

1. Railroads—Issue as to Spark Arrester on Engine Held for Jury.— In action for injuries in runaway caused by sparks falling on horse from engine, whether defendant's engine was equipped with proper spark arrester held for jury.

2. Railroads—Statute Requiring Spark Arresters  Protection from Personal Injuries.—Ky. Stats., section 782, requiring spark arresters on engines, may be taken advantage of by buggy rider injured when horse ran away because burned by cinders and sparks, in view of sections 466, 793.

3. Witnesses—Court Erred in Not Permitting Cross-Examination of Plaintiff to Show where She Purchased Drugs Included in Damages. —Where large druggist bills were an item of damages claimed for personal injuries, it was proper for defendant to require plaintiff as witness on cross-examination to disclose from what drug stores she had purchased drugs.

4. Damages—$5,500.00 Held Excessive for Personal Injuries and Expenses.—In absence of evidence of permanent injury, and in view of lack of detailed testimony as to medical services and druggists' bills claimed to amount to $2,000.00, a verdict of $5,500.00 held so excessive as to require new trial.

WOODWARD & WARFIELD and S. R. CREWDSON for appellant.

O. M. SMITH and HUBERT MEREDITH for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellee brought this action for damages. wherein
she alleges that while she and another were driving along
the highway in a buggy, at a point where the highway ran
near to and parallel with the defendant's railroad tracks,
they met a freight train operated by defendant, traveling
up grade, and that it was at the time emitting from its
smoke stack large red cinders and balls of fire which fell
all over the ground and pike where she was traveling and
on the horse she was driving, and that the horse was
thereby burned in many places, which caused it to be
frightened and to surge, jump and lunge so as that the
plaintiff and her companion were thrown from the buggy,
whereby plaintiff suffered serious and permanent in-
juries.

The chief negligence charged is that defendant failed
to place on or around the tops of the chimneys or engines,
or to keep or maintain around the same, a spark arrester
or other appliance that would prevent as far as possible
sparks of fire from escaping from such engine or smoke
stack.

The answer was a complete traverse, and in addition
a plea of contributory negligence, and a further affirma-
tive plea that defendant's engine was at the time
equipped with such screen or modern appliances as would
prevent the probable escape of sparks from its smoke
stack, and had adopted the most effective character of
appliances to prevent such escape.

The affirmative pleas of the answer were contro-
verted on the record, and on a trial a verdict was returned
for the plaintiff for $5,500, and from a judgment on that
verdict this appeal is prosecuted.

The evidence for plaintiff tended to show that at the
point where the buggy and the train met the highway on
which the buggy was traveling was only about thirty feet
from the railroad tracks, and that at the time and before
it reached the buggy there were being emitted from the
smoke stack large cinders and balls of fire which were
falling around on the highway, and fell upon the buggy
and the horse; that the horse did not become frightened
at the approach of the train, but that when the hot cinders
from the engine fell upon the horse they burned him and
caused him to lunge and lurch and overturn the buggy
whereby the plaintiff was thrown out and injured.

The evidence for defendant was chiefly directed at showing it had and maintained on its engine the most modern and approved spark arrester, and that same was then in good condition and properly adjusted. The evidence, however, for the plaintiff tended to show that the size of the cinders and pieces of fire emitted from the engine could not possibly have escaped through the wire netting which was introduced in evidence by defendant on the trial as similar to that from which the spark arrester was made.

The first contention is that appellant was entitled to a directed verdict under the ruling of this court in the case of L. & N. R. R. Co. v. Mitchell, 17 R. 977. In that case, however, there was no conflict in the evidence submitted by defendant to the effect that the spark arrester in use was the best device known of its kind and was in good repair, nor was there any evidence tending to show that a house 235 or 240 feet from the railroad track could be ignited from a live spark emitted from the engine. In this case, however, there is direct evidence not only that large cinders and sparks were actually thrown from the engine, but that it would have been a physical impossibility for the sparks the size that were emitted therefrom to have passed through a screen of such fine mesh as was introduced on the trial. Not only so, the evidence here shows that the horse was at the time and place of meeting only about thirty feet from the railroad track.

We are convinced, therefore, that the evidence in this case justified the submission of that issue to the jury.

But it is urgently insisted that appellant was entitled to a directed verdict because the statute requiring railroad companies to place on their engines such appliances to prevent as far as possible, sparks of fire from escaping therefrom, was intended only to protect the property rights of persons along its line and prevent its destruction by fire, and has no application in any event to personal injury that may be suffered by persons who may be injured as a result of such emission.''

Section 782, Kentucky Statutes, is as follows:

"All companies shall place in, on or around the tops of the chimneys or engines, a screen, fender, damper or other appliance, that will prevent, as far as possible, sparks of fire from escaping from such chimneys,''

and section 793 provides a penalty for the violation of that duty.

If these were the only statutory provisions on the subject, there would be at least some force in the argument of appellant's counsel; but we have in addition a statute of general application wherein by the use of broad and comprehensive language it is declared:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed." Kentucky Statutes, section 466.

In the case of L. & N. R. R. Co. v. Haggard, 161 Ky. 317, the precise question was raised and passed upon in a personal injury case. In that case a woman was confined to her bed from recent childbirth and her home was about one hundred feet from the railroad track; a fire alleged to have originated from sparks emitted from a passing engine, although it did not reach the house, carried smoke and hot air into the house where the woman was confined, whereby she was suffocated and made ill. The court, in response to the same argument that is here made, said:

"This brings us to the vital question in the case. The defendant insists that there can be no recovery for the plaintiff's personal injury. It is insisted that the statute only intends to protect adjoining property; but by section 466, Kentucky Statutes, a person injured by the violation of a statute may recover from the offender such damage as he may sustain by reason of its violation; and under this provision we see no reason why one who sustains a personal injury by reason of a fire negligently started by a railroad company may not recover compensation therefor." See also Morgan's Admr. v. L. & N. R. R. Co. (May 2nd, 1924.)

There is likewise some complaint of the form of the instructions, but a careful inspection of them has convinced us that they fairly and accurately submit the issues in the case, and are not subject to any just criticism.

Also, there are several alleged errors complained of in the admission and rejection of evidence, only one of which we deem of sufficient importance to merit consideration. The plaintiff in her petition by way of special damages alleges that because of her said injuries it had been necessary for her to expend for physicians, nurses and medicine $1,500.00, and that she had been

damaged by reason of time lost in the sum of $600.00, aggregating $2,100.00 in special damages for which she prayed. On her examination in chief when asked by her counsel what expense she had incurred for these things, she answered: "I suppose about $2,000.00." On cross-examination, when asked how much of that amount she had expended for medicine, she answered: "I suppose about one-third of that." Then counsel for appellant asked her what drug store she bought the medicine from and her answer was "different ones," and then she said she had not yet paid all of it, and counsel then asked her to whom she owed it, and the court sustained an objection to the question and did not require her to answer it. Clearly this was error. The plaintiff had alleged $2,100.00 in special damages, one item of which was druggist bills, the amount of which she fixed at $666.00. Clearly under these conditions it was entirely proper for defendant to require the witness to disclose from what drug stores she had purchased this rather unusual quantity of drugs, to the end that defendant might have shown her supposition as to the amount to have been erroneous.

It is of course entirely unsatisfactory for a party claiming special damages to testify that in three or four different ways she has expended a lump sum of money by reason of her injury, and especially when there is denied to her adversary the right to cross-examine her as to the several amounts which she expended and with whom she expended them, so that he may, if he can, contradict her and show the exact amounts. Not only had appellant the right to cross-examine her about the persons from whom she bought the drugs, but, also, the right to require her to state to whom she had paid and exactly what amounts she had paid for doctors' and nurses' bills.

The trial in the circuit court took place about eleven months after the accident, and several physicians, who had in the meantime treated appellee for her injuries, testified on the trial. No one of them was willing to state or did state that her injuries were permanent, but they each in substance contented themselves with expressing the opinion that at that time it would be impossible to tell whether her injuries would be permanently cured, as she then had not entirely recovered from them. One or two of the doctors expressed the view, however, that with proper treatment she might eventually entirely recover.

Taking into consideration, therefore, that there is no evidence of permanent injury, and supplementing that with the denial of the trial court to the defendant of the right to inquire into the details of her expenditures for special damages, it is apparent that the verdict is excessive. The argument of counsel for appellee that plaintiff's uncontradicted statement that she had expended $2,000.00 by reason of her injury, which when deducted from the $5,500.00, would only leave $3,500.00 for compensation, would have some force if the plaintiff had shown by evidence in detail that she had in fact expended the $2,000.00, and if the defendant had not been denied the right to inquire into the details of this alleged expenditure.

But because of the excessive verdict, and the effect upon it which might have been produced by the court's error in refusing to permit defendant to inquire into the details of her alleged expenditures, we have reached the conclusion there should be a new trial.

For the reasons given the judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.