# Consolidated Coach Corporation v. Hopkins.

(Decided February 26, 1929.)

KEENON & HUGELET for appellant.

GILBERT, PICKETT & MATTHEWS for appellee.

Opinion of the Court by Commissioner Stanley—Affirming.

A bus of the appellant, Consolidated Coach Corporation, a common carrier, being driven from Louisville to Lexington, left the road on a compound curve a short distance east of Shelbyville on the morning of February 2, 1927. It ran down an embankment a short distance over rough ground until it struck a fallen tree or other obstacle. It did not turn over. The appellee, Mrs. Julia Hopkins, who was one of the passengers, instituted this suit for damages sustained in that accident. A judgment of $2,200 was recovered, from which the appeal is prosecuted.

1. The petition charges the negligent operation of the motorbus and also defective brakes, steering gear, and other equipment, of which the defendant had knowledge, or by the exercise of ordinary care could have discovered in time to avoid injuring plaintiff. Both items of negligence were submitted to the jury under an appropriate instruction. Appellant insists that if the accident was the result of negligence, it was either in the operation or defective equipment; that if proper to submit the case at all, it should have been on one or the other ground of negligence, but not both of them. Clearly, there was but one cause of action resting, according to the petition, upon two negligent acts. A party may rely upon any one or several acts of negligence of which he considers the

defendant guilty, and it is proper for the court to submit any or all of them if there is evidence tending to sustain the allegations. Louisville & N. R. Co. v. Gaines, 152 Ky. 255, 153 S. W. 216; Rehkamp v. Martin, 198 Ky. 34, 247 S. W. 1115. The case of Cincinnati, N. O. & T. P. R. Co. v. Goldston, 156 Ky. 410, 161 S. W. 246, relied on by appellant, is not at variance with this rule. The vice in the instruction condemned in that case was the inclusion of a third act of negligence not pleaded. The submission of the two acts of negligence relied on was approved.

2. It is further contended that there was no evidence of negligence in either particular, and the court should have sustained appellant's motion for a directed verdict. It is merely shown that the motorbus failed to make the curve and ran off the road; that the driver tried to apply the brakes, or did apply them, and later said the reason why the car left the road was that the brakes would not work. The driver did not testify, because, as we are informed in brief, he could not be located.

Actionable negligence is founded on a duty and the failure on the part of one on whom it devolves to discharge that duty either by acts of commission or omission. Cincinnati, N. O. & T. P. R. Co. v. Harrod's Adm'r, 132 Ky. 452, 115 S. W. 699; Helm v. Cincinnati, N. O. & T. P. R. Co., 156 Ky. 240, 160 S. W. 945; Brown's Adm'r v. Louisville & N. R. Co., 97 Ky. 236, 30 S. W. 639, 17 Ky. Law Rep. 145; Walker v. Louisville R. Co., 182 Ky. 299, 206 S. W. 484.

The duty of a common carrier to its passengers is to exercise the highest degree of care (Louisville & N. R. Co. v. Johnson, 168 Ky. 351, 182 S. W. 214, L. R. A. 1916D, 514), and it "is bound to provide for their safety so far as human care, skill, and foresight are capable of securing that end." Morgan v. Chesapeake & O. R. Co., 127 Ky. 435, 105 S. W. 961, 32 Ky. Law Rep. 330, 15 L. R. A. (N. S.) 790, 16 Ann. Cas. 608. In Louisville & N. R. Co. v. Mitchell, 162 Ky. 253, 172 S. W. 527, it is said that where a passenger is shown to have suffered an injury, "the burden is upon the carrier to show that it could not have prevented it by the exercise of the utmost skill and foresight."

(a) Appellant argues that the burden was upon the plaintiff to prove the latent defect, if any, in the brakes, and the same was known to the defendant, or it could have been discovered by it in the exercise of ordinary care. But this contention cannot be sustained.

In Louisville & N. R. Co. v. Mitchell, supra, this quotation is given from the Morgan case: "When the passenger has proved his injury as the result of a breakage in the car or the wrecking of the train on which he was being carried, whether the defect was in the particular car in which he was riding or not, the burden is then cast upon the carrier to show that it was due to a cause or causes which the exercise of the utmost human skill and foresight could not prevent. And the carrier in this connection must show, if the accident was due to a latent defect in the material or construction of the car, that not only could it not have discovered the defect by the exercise of such care, but that the builders could not by the exercise of the same care have discovered the defect or foreseen the result."

It was therefore proper for the court under the evidence and authorities to submit to the jury this element of negligence.

(b) While there is no testimony of any specific negligent act of the driver in operating the bus, it is very apparent that the car would never have left the road had it been properly operated. The fact itself indicates negligence. It is true, generally speaking, that negligence is never presumed, but negligence may be inferred from proof of facts or circumstances. Chesapeake & O. R. Co. v. Rogers, 193 Ky. 571, 237 S. W. 18; John R. Coppin Co. v. Richards, 191 Ky. 720, 231 S. W. 229. The fact that the bus left the road under the circumstances shown is sufficient to support the plea of negligent operation. There was no evidence introduced by the defendant in explanation of the accident. The following extract from the opinion in Paducah Traction Co. v. Baker, 130 Ky. 368, 113 S. W. 452, 18 L. R. A. (N. S.) 1185, is pertinent and applicable to the facts of this case:

"It often happens that a passenger of a common carrier, who is injured by its negligence, is not able to point out the particular person or thing that caused the negligence, or describe in what it consisted, as the passenger does not know, and may not have any means of knowing. But, it does not follow from this that the passenger may not make out his cause of action, or a cause that would authorize a submission of the issue to the jury.

"It is a general rule that the plaintiff, in actions to recover damages for personal injuries, as well as

in other cases, has the burden of proof, and must introduce evidence in support of the cause of action set out in his petition; but, if the cause that produced the negligence and consequent injury is not within the reasonable reach or knowledge of the plaintiff, then he may, especially in actions against carriers, go to the jury upon evidence of negligence and resulting injury without being required to specify the particular cause of the negligence. And this, by the application of the well-recognized rule of res ipsa loquitur, which means, 'the thing speaks for itself.' . . . 'The accident, the injury and the circumstances under which they occur, are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. . . . Where a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who had the management of it used proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from a want of care.' "

The appellant has no cause to complain of the submission of the case to the jury.

3. The instruction on the measure of damages is as follows: "If the jury finds for the plaintiff it should find for her such a sum in damages as it believes from the evidence will reasonably compensate the plaintiff for the reasonable expense of the care of a doctor, if any, not to exceed $200.00, the amount claimed, and for any mental and physical pain endured by her or it is reasonably certain she will endure in the future, if any, as a direct result of the injury, if any, not to exceed in all $5,200.00, the amount claimed in the petition."

It is claimed the instruction is erroneous in two respects: (a) In the absence of an allegation of permanent injury nothing should have been allowed for future pain and suffering; and (b) although there was an allegation of $200 expenses incurred for medical services, the evidence did not authorize special damages to that extent.

(a) The petition charges that the negligent operation of the car as above stated caused plaintiff "to be thrown and jostled in her seat, wrenching the muscles in her back, bruising and wrenching her body, causing her internal organs to become misplaced and otherwise in-

juring her upon her legs, body and neck and causing her to suffer great physical pain and mental anguish,'' and ''that by reason thereof she will continue to suffer great pain and to become weak and nervous and unable to perform her wifely functions and household duties.''

The evidence as to the injuries causing future pain and suffering by plaintiff was sufficient, as will be observed from the statement hereinafter given.

The question raised by appellant may be stated in the abstract: Is it necessary to charge and prove permanent injury in order to recover for pain and suffering to be endured after filing of the suit or trial of the case? The answer is suggested by an axiomatic question: Should it be shown that plaintiff would certainly suffer for a period of five years from injuries sustained, would it be contended that she might recover only to the time of trial, which perhaps was had one month after the accident?

The form of instruction given is uniform with that approved by this court for many years. Hobson on Instructions, sec. 216 et seq.; Louisville & N. R. Co. v. Barrickman, 104 S. W. 273, 31 Ky. Law Rep. 883; Newport, L. & A. Turnpike Co. v. Pirmann, 82 S. W. 976, 26 Ky. Law Rep. 933; Palmer Hotel Co. v. Renfro, 173 Ky. 447, 191 S. W. 271; City of Richmond v. Hill, 195 Ky. 566, 242 S. W. 867. We have examined the cases cited by appellant, and find they may be clearly distinguished, in that in most of them there was a claim only for past pain and permanent injury, and the instruction limited the recovery accordingly. It does not appear that any recovery for future pain and suffering was asked in any of the cases. In Moses v. Proctor Coal Co., 166 Ky. 805, 179 S. W. 1043, the rule is thus stated: ''Where it appears from the evidence that the plaintiff will continue after the trial to endure suffering from his injuries, he may recover therefor, regardless of whether there is permanent impairment of earning power pleaded or proven. L. & N. v. Stewart, 163 Ky. 164, 173 S. W. 757; Main Jellico Mountain Coal Co. v. Young, 160 Ky. 397, 169 S. W. 841.''

The instruction was therefore correct in this respect.

(b) Time and again it has been declared to be an elementary rule that instructions must be based on the pleadings. And it has been stated just as many times that it is elemental that the instructions should be based

on the evidence. Some confusion seems to have arisen on occasion by an apparent conflict in these statements. Taken together, they simply mean that there must be a concurrence of pleading and evidence, that is, the issue made by the pleading must be supported by evidence, and vice versa. Hobson on Instructions, secs. 37, 38, and authorities cited. In giving to the jury the measure of damages of an indefinite and uncertain nature, or where it is to be left to the jury to fix the amount, such as for pain and suffering, the limit of recovery should, and must of necessity, be that claimed in the petition. But where special damages are claimed and proven, such, for instance, as expenses incurred for surgical treatment, the limit of recovery, when properly pleaded, should be the maximum amount shown by the evidence, unless it exceeds that claimed in the petition, in which event recovery must be limited to that claimed. Generally, special damages of this character are approximately within the knowledge of the plaintiff, or are capable of ascertainment within some degree of certainty. Blue Grass Traction Co. v. Ingles, 140 Ky. 488, 131 S. W. 278; Lexington & E. R. Co. v. Crawford, 155 Ky. 723, 160 S. W. 267; Davis, Agent, v. Rodes, 206 Ky. 341, 266 S. W. 1091.

The instruction permitted the jury to find the amount they believed from the evidence would reasonably compensate the plaintiff for the reasonable expense of the care of a doctor, not exceeding $200, the amount claimed in the petition. It is contended that the maximum amount shown in evidence was only $100, and recovery should have been limited to that sum. The evidence in this regard is meager. Dr. Nash, plaintiff's physician, stated the reasonable value of his services would be $75 to $100, but he had not made out his bill. The plaintiff testified she had made two visits to Dr. Abel, an eminent surgeon in Louisville; but there is no evidence as to the amount of his account. She was asked and answered: "Q. What is the amount of your doctors' bills as a result of this accident? A. I haven't an itemized account. I would say it was every bit of $200.00." While this character of testimony is not satisfactory evidence (Louisville & N. R. Co. v. Epley, 203 Ky. 461, 263 S. W. 626), it cannot be said there was no evidence of expenses in excess of Dr. Nash's account, and it was therefore sufficient in this instance to use the amount claimed in the petition which was the same as the maximum shown in evidence.

4. Coming now to consider the claim of excessive damages, which ground for reversal is insisted upon with great vigor. Let us first state the rule by which the court is to be guided, namely, that a verdict of a jury will not be set aside for this cause unless the damages awarded are so great as to strike the mind on first impression as having been superinduced by passion or prejudice; or that the award so grossly exceeds the damages or injuries proved as to shock the conscience and raise an irresistible inference of having been influenced by considerations other than the law and evidence. Coupled with this is to be considered the rule that, though the verdict may be large, it will not be set aside when there is evidence reasonably supporting it. Cole & Crane v. May, 185 Ky. 135, 214 S. W. 885, and cases cited; Southern Ry. v. Dougless, 169 Ky. 360, 183 S. W. 937.

The appellee is the wife of a farmer, and at the time of the accident was 37 years of age. When the bus was running over the embankment and making its way across the rough ground, she was thrown about violently in the car and against the back of the seat in front of her, causing the bruising of her left leg below the knee. She continued on her journey to Frankfort on a later bus and alighted at the top of a rough, steep hill, walking down to the capitol, where she stopped a few minutes, and then went to the home of a friend a square or two away. She felt no ill effects of her experience, other than slight pain from the bruise, until the afternoon, when she began suffering with head and back ache and otherwise feeling ill. She began menstruating that day, which was ten days sooner than her regular time. This continued for ten days or two weeks, while her normal periods were three to five days. The morning after the accident her back was stiff and she suffered considerable pain. Three days later she visited her doctor and took "light treatments" from him twice a week for ten weeks, and thereafter continued the treatments irregularly up to the time of the trial, one year after the injuries were sustained. The plaintiff testified that she daily suffered pains in her back and head; that she was unable to sew or perform her other household duties without considerable pain. Four months after the accident she had lost about 20 pounds in weight, although she had made a slight gain when testifying. She did not sleep well. She stated that in May following the accident there was some kind of "breaking out" on her body.

Before the accident, plaintiff testified she never suffered with head or back aches, nor had any disturbance in the natural functions of women. Early in May, she visited Dr. Abell in Louisville, who gave her a complete physical examination, and on the second trip advised her to take some medicine and to take care of herself. It appears that about eight years before the accident Mrs. Hopkins had been operated on by Dr. Abell to correct some lacerations due to childbirth, since which time she testified she had been in sound health and not subject to any of the ailments or conditions manifested since the accident. She had been able without difficulty to perform the duties of her household, such as sewing, sweeping, cooking, laundering, and the like. Now in the early part of her menstruation periods she is not able to do anything and has to employ others to do some of her work.

Dr. W. H. Nash, appellee's physician, corroborated her as to the extent of his treatment. He stated she suffered a great deal from shock and had a back injury in the nature of a sprain, which gave a good deal of pain, especially when pressure was brought to bear on the spine, and that she had lost weight and manifested nervous symptoms. The "light treatments" were electrotherapy, the purpose of which is to cause the blood to flow to the place where pain is experienced and thereby to feed and mend impaired tissues. The "breaking out" described by Mrs. Hopkins was some sort of eczema caused by poison in the system due to lowered vitality. On hypothetical questions, and from the history of the case, the doctor testified that the conditions indicated a severe shock and irritation of the nerves controlling the menstrual functions. He expressed the opinion that the ailments from which the plaintiff had been suffering were probably the result of the accident. He did not attribute them to natural causes, such as the change of life, which he stated usually occurs in women of the average age of 45. He could not say how long the plaintiff would suffer from these conditions, but that she will suffer as long as there is irritation of the nervous system or injury of ligaments that support the spinal column.

Dr. W. P. Hughes appears to have made two physical examinations of the plaintiff at defendant's instance. He found no external injuries nor other objective symptoms, except that pressure over the spine caused complaints of pain. The "breaking out" on the body he described as having the character of ringworm, a germ dis-

ease. He testified he could find nothing in her condition attributable to shock or the accident, and expressed the opinion that dead teeth caused the trouble in her back; and also that the extraordinary physical exertions on the day of the accident probably caused a brief disturbance; that at plaintiff's age variations in menstruation are to be expected as natural.

It will thus be seen that there was evidence sustaining the plea that plaintiff's condition was due to the accident.

There is no standard by which pain and suffering can be measured. It must be left to the twelve men composing the jury to award what in their composite judgment is fair compensation. Often internal injuries, perhaps of great magnitude, are minimized because there is no visible wound and because the impression of seriousness is not as great as where there is an external injury or clear objective symptom.

Although the verdict appears to be liberal, the court does not feel, under the rules above stated, that it is authorized to set it aside as excessive.

The court has carefully considered alleged errors in the admission of incompetent evidence and improper argument of counsel for appellee. While some of the evidence and argument complained of was incompetent and improper, it cannot be considered substantial or prejudicial error. In the trial of nearly every case, some irrelevant evidence creeps into the record; but such as came in here is not of sufficient materiality to warrant detail discussion, except perhaps in one instance.

While the plaintiff was being cross-examined as to when she first made known her injuries and asserted claim against the appellant company, she replied that she had delayed notice because the driver of the bus stated at the time that he "would have some one from the insurance company to see us in a few days and I had waited and waited, thinking that the insurance company would have a representative here to see me and no one came." It has been uniformly held to be error to inform the jury that the defendant was carrying indemnity insurance (Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958), but we hardly see how it could have been avoided in this instance. There is nothing to indicate that plaintiff was trying to do anything other than respond to questions asked by defendant's counsel and to explain

that her delay in making claim was because of the statements of the driver. Though improper, it cannot be said to be prejudicial. No objection was made at the time the answer was given, but at the close of her testimony a motion to exclude this statement from the jury was overruled. Had the court sustained the motion and admonished the jury, it is likely emphasis and prominence would have been given to it and greater damage done appellant than letting it alone. It does not appear the matter was mentioned in argument.

No prejudicial error appearing, the judgment is affirmed.

Whole court sitting.