## Louisville & Nashville Railroad Co. v. Grassman.

### (Decided March 16, 1912.)

## Appeal from Henry Circuit Court.

1. Master and Servant—Railroad—Personal Injury—Fellow Servant.—A station agent is not a fellow servant of the conductor, engineer or brakeman of a passenger train.

2. Same—Petition—Sufficiency.—In an action for damages for personal injury, a petition that alleges that plaintiff, a station agent, was injured by the negligence of a conductor, engineer and brakeman of a passenger train in prematurely starting the train and thereby causing a trunk to fall on plaintiff, sufficiently negatives the idea that plaintiff's injury was caused by the negligence of a fellow servant.

3. Same—Evidence—Peremptory Instructions.—In an action for damages for personal injury, evidence examined and held sufficient to justify the submission of the case to the jury.

4. Same—Petition—Permanent Injury—Instruction.—To warrant so far as the petition is concerned the giving of an instruction authorizing a recovery for the permanent impairment of one's ability to labor and earn money, all that is necessary to allege in the petition is that the plaintiff was permanently injured.

5. Same—Witnesses—Impeaching—Error.—It is not error to reject testimony tending to impeach a witness when proper foundation as to time was not laid when the witness sought to be impeached was on the stand.

6. Same—Damages—Excessive.—In an action for damages for personal injury, the evidence examined, and held that a verdict of $4,500 was not excessive.

MOODY & BARBOUR, JACK HARDING and BENJAMIN D. WARFIELD for appellant.

EDWARDS, OGDEN & PEAK and C. H. SANFORD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, J. L. Grassman, brought this action against the appellant, Louisville & Nashville Railroad Company, to recover damages for personal injury. The jury returned a verdict in his favor for $4,500 and the railroad company appeals.

At the time he received the injuries complained of, appellee was appellant's station agent at Campbellsburg, in Henry county, Kentucky, and had served in that capacity for about five years. When he was about thirteen years of age, he lost his left hand. As part of his duties as station agent, he was required to assist in loading and unloading baggage from passenger trains. He was receiving sixty dollars a month from the railroad, and from fifteen to thirty-five dollars a month from the express company. According to the evidence of appellee and his witnesses, his injury was received under the following circumstances:

Appellee and some negro men who were helping him, upon the arrival of the passenger train bound for Cincinnati, moved a truck up to the express car. There were one or two pieces of express on the truck, and appellee first unloaded some express out of the car on to the truck. The baggageman in the car told him to get the trunks out first. Appellee then had the colored men to move the truck back out of the way so that the trunks could be gotten out. There were three large trunks in the car. Two of them were removed from the car and placed on the ground. While leaning over against one of the trunks on the end of the dray, which it was necessary to roll out of the way to make room for the three trunks to come out of the car, the brakeman gave the signal for the train to start, and jumped on the train. The train started, and a trunk fell out of the car, hitting appellee in the back and knocking him against one of the trunks which he had unloaded. The train proceeded on away. Frank Robinson, who was present, swears that he saw the brakeman give the signal and the train start. He further states that he saw appellee a few minutes after he was struck, and that appellee complained of being hurt.

Jim Durham, another witness who was present, after describing the location of the truck, says that a couple of trunks had been taken out; that appellee had hold of one of the trunks that had come out of the car, and was endeavoring to roll it out of the way; that appellee had his side towards the train. While he was moving the trunk out of the way the third trunk came out of the car, after the train had started off; did not know whether the baggage man pushed the trunk out or the starting of the train threw it out. When appellee was struck, he said: "That trunk like to have broke my ribs."

Arthur Reed, who was also present, and assisting Grassman in unloading the baggage, testified that he saw a man give a signal and the train start. As soon as the train started off a trunk came out.

Robert Palmer, also one of appellee's assistants, corroborates the other witnesses as to the train being started upon a signal from the brakeman.

Appellee also testifies that on the night of the injury he went to his home suffering considerably, and was unable to sleep with any comfort. He discovered that he was passing blood in his urine, and next day sought the advice of a physician, under whose care he remained for several months. That since the accident he had fallen off about 16 or 18 pounds. Dr. Voris testified that he was called in consultation with Dr. Suter to see appellee about February 1, 1911, and that he examined him several times. He found appellee suffering from an enlargement of the left side. He found a dullness below the ribs on the left side, and upon the next examination he found this dullness had extended lower down. He discovered that appellee's spleen was involved, and that this condition was worse at the trial than when he made the first examination. In his opinion, the injury was permanent. He also stated that he found pus in appellee's urine, which indicated a diseased condition of the kidneys. Dr. Suter testified that he saw appellee on November 15th, the day after the injury. Appellee was then complaining of his bowels and back hurting him. The first examination he made was not a thorough examination, but as appellee kept growing worse, he became more interested in the case, and when he called to see appellee at his house, he found him suffering with his back and bowels. He could scarcely make any pressure on appellee's body. Appellee could not turn in his bed without assistance. Appellee passed blood with his urine. While appellee's nervous condition was somewhat improved, his internal condition was worse. In his opinion, appellee had enlarged spleen and dislocated kidneys. The spleen was also dislocated on account of enlargement. On the day before he testified, he examined appellee's urine, and found traces of sugar in it. In his opinion, appellee's injury was permanent.

Dr. Bishop testified that he made no examination of appellee's kidneys, but found him suffering from an enlarged spleen.

Appellee himself testified that he had suffered a great deal since the injury. He admits, however, that after the injury he continued to perform his labors as station agent, and to assist in loading and unloading baggage. He did not report the accident to the company. His reason for not doing this was that owing to the loss of his hand he could not do other kinds of work, and wanted to continue in the service of the railroad as long as he could possibly hold out. He was afraid if he made complaint he might lose his position.

For appellant, P. J. Fitzgerald, the conductor in charge of the train, testified that he had no knowledge of any such occurrence as detailed by appellee. He knew nothing of any trunk having fallen from the train. He saw appellee frequently after the accident, and appellee continued to load and unload baggage as if nothing had happened. Appellee's condition and manner of doing his work were the same after the accident as they had been before. The flagman testified that he knew nothing of any particular occurrence at Campbellsburg. It was his duty to signal for the train to proceed after the baggage was loaded and unloaded and the train was ready to start. He is confident that he had given no signal for the train to proceed until the train was ready to do so. He saw no difference in appellee's condition, and in his manner of loading and unloading baggage after appellee claims he was hurt.

The baggage-master, George Deer, testified that he was on the train at the time appellee claims to have been hurt. He had no right to give appellee any orders or directions as to how the baggage was to be managed, and is positive that he did not throw a trunk from the car, and that no trunk fell from the car. The baggage was all unloaded before the train started.

Tom Jefferies told of a wrestling match he saw between appellee and Brakeman Brock, which occurred after the accident. He never heard of appellee complaining of being injured until after he was discharged. Henry Sherley, colored, also told of scuffles he and appellee had indulged in after the accident. B. W. Chiles, who was telegraph operator at Campellsburg, testified that he was present on the occasion when the train ran up. The baggage-car door was open and the trunks were in the car door. Appellee had rabbits, eggs and chickens on the truck, and pulled the truck up beside the car door. He saw that they could not get the express into the car.

The truck was so that they could not get the trunks on it. All three of the trunks were unloaded before the train started. After all the trunks had been unloaded, the truck was rolled up to the car door. Two boxes of express were put on, and he started to put on the chickens, but was told not to do so. The train pulled out and left the chickens. He didn't hear appellee complain of being hurt; that appellee was on duty until he was discharged on January 19, 1911. Appellee was at his office every day until he was discharged, except two days when he was attending court at New Castle. Saw no difference in the way appellee performed his work before and after appellee claims he was injured.

It also developed during the trial that appellee, sometime previous to the occasion when he claims to have been injured, had overlooked a train order, and had also been guilty of a similar offense several months prior to that time. He notified the superintendent of the fact that he had overlooked the train order, and upon his return from New Castle, where he had testified in the case of Foote v. L. & N. R. R. Co., he found his discharge awaiting him.

Dr. Owen Carroll testified that he, in company with other physicians, examined appellee and found his condition normal; that appellee's spleen was in its proper place; could not feel appellee's kidneys, but took them to be normal; found appellee's urine normal, except the specific gravity was a little high. Was of the opinion that appellee was not suffering from any permanent injury.

Dr. Johnson also testified that he examined appellee and found his condition normal. In his opinion, appellee was a healthy man. Appellee's spleen was in proper position. Could not find anything about his kidneys to show that they were not in their natural place. His examination of appellee's urine showed a little abnormal condition. His examination didn't detect any other abnormal condition.

Appellant first insists that the demurrer to the petition was improperly overruled. In this connection it is insisted that the petition was defective because it failed to allege that the servants of the appellant, for whose negligent acts appellee sought a recovery, were other than fellow servants in the same line of employment with him. We think the petition was sufficient in this respect. The petition charges negligence on the part of the con-

ductor, engineer and brakeman, in prematurely starting the train before the baggage was unloaded, and thereby causing the trunk to fall with violence against appellee. The petition therefore shows that appellee sought a recovery because of the negligence of the conductor, brakeman and engineer. A station agent is not a fellow servant of a conductor, engineer or brakeman on a passenger train. Their duties do not require immediate co-operation, and do not bring them together in such relations that they can exercise an influence upon each other promotive of proper caution. (L. & N. R. R. Co. v. Brown, 127 Ky., 732; Ky. Central R. R. Co. v. Aklen, 87 Ky., 288; C., N. O. & T. P. R. R. Co. v. Hill, 28 Ky. L. Rep., 530; L. C. & L. R. Co. v. Cavens, 9 Bush, 559; Louisville Railway Co. v. Martin Hübbitt, 139 Ky., 43; Milton's Admr. v. Frankfort & Versailles Traction Co., 139 Ky., 53.)

We deem it unnecessary to pass upon the question of whether or not the baggage-master and appellee were fellow servants, for the court, by its instructions, authorized a recovery by appellee only in the event that, through the negligence of the conductor, brakeman or engineer, the train was negligently started, or permitted to be started, before the baggage was unloaded, and by reason thereof the trunk fell or was caused to fall from the baggage car against appellee. Not only this, but the court told the jury by another instruction that there could be no recovery if the trunk fell upon or against appellee because of the negligence of the baggage-master. The instructions in this respect are not subject to complaint, for instructions more favorable to appellant could not have been given.

Nor did the court err in authorizing the jury to award appellee damages for permanent impairment of his ability to labor and earn money, because there was no averment in the petition that his ability to labor and earn money was impaired by the accident. The petition did allege that appellee was permanently injured. This allegation was all that was necessary to support the instructions, for a permanent impairment of one's ability to labor and earn money is merely the test to be applied by the jury in determining the damages to be awarded for a permanent injury. (Cumberland Tel. & Tel. Co. v. Overfield, 127 Ky., 548.)

Without discussing the question at length, we conclude that there was sufficient evidence of the fact that

appellee's injuries were the result of the negligent starting of the train before the baggage was unloaded, to justify the submission of the case to the jury. That being true, the court did not err in refusing the peremptory instruction asked for by appellant.

Appellant further complains of errors in the rejection of testimony. We have carefully considered the alleged errors, and in some instances we find that where evidence was rejected no avowals were made, and in other instances we find that the evidence itself related to immaterial matters.

The court did not err in refusing to permit Dr. Carroll to impeach Dr. Suter, by detailing the conversation which he had with the latter, for while Dr. Suter was on the stand, proper foundation was not laid by fixing the time when the alleged conversation took place. While there are some circumstances tending to show that appellee's injuries are not serious, we cannot say, without disregarding entirely the evidence of his physicians, that the finding of the jury, who saw him and heard him and his witnesses and the witnesses for appellant testify, was so excessive as to strike us at first blush as being the result of prejudice and passion.

Judgment affirmed.