# Teague, by, etc. v. Princeton Ice & Storage Company.

(Decided October 24, 1924.)

## Appeal from Caldwell Circuit Court.

1. Municipal Corporations—Testimony Held Not to Show Negligent Operation of Motor Truck, Frightening Horse.—Evidence held not sufficient to show negligent operation of truck, frightening horse and injuring plaintiff.

2. Evidence—Statement that Truck was Running too Fast and at High Rate of Speed Merely Expression of Opinion.—Witness' statement that motor truck was running too fast and at high rate of speed was merely expression of opinion, unless coupled with some estimate of what that rate of speed was, and after qualification to make such estimate.

3. Evidence—Common Knowledge that Smoke Necessarily, at Times, Comes from Operation of Motor Vehicle.—It is matter of common knowledge that smoke necessarily, at times, comes from operation of motor vehicles.

4. Municipal Corporations—That Motor Truck "Blowed Out Smoke," Frightening Horse, Does Not Show Negligence.—Fact that motor truck "blowed out smoke," frightening horse, cannot be deemed negligence.

5. Municipal Corporations—That Motor Truck Causes Horse to Run Away no Evidence of Negligence.—Mere fact that operation of motor truck on highway causes horse to run off is no evidence of negligence.

T. T. HANBERRY, ALVIN LISANBY and R. W. LISANBY for appellant.

J. C. GATES for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant, an infant, brought her action for damages against appellee alleging that in August, 1922, defendant by the negligent operation of an ice truck then being operated by its agents and servants and engaged in the delivery of ice to its patrons, caused a horse which was hitched to a buggy on the streets of Princeton to become frightened and run away, whereby plaintiff, an occupant of the buggy, was injured.

Negligence was denied and contributory negligence alleged.

On the trial at the close of plaintiff's evidence a peremptory instruction was given by the court, and a

verdict accordingly returned upon which judgment was entered.

The only question necessary to determine is whether the allegation of negligent operation was sustained by the plaintiff's evidence so as to authorize submission to the jury.

The facts are that appellant, an infant then about twelve years of age, lived with her father some distance away from the city of Princeton, and on the occasion in question came to the city with her father in the buggy drawn by a horse, the father coming for the purpose of selling his vegetables. There is an addition to the city of Princeton called White City, to which appellant's father went in the prosecution of his business that day. At or near an intersection with the railroad a road coming from the country intersects a short street going up into White City and running approximately parallel with the railroad tracks; the first street it intersects is called Main street, and the father drove his horse into Main street, left the buggy to sell vegetables, and his daughter was left sitting in it on the south side of the street. The child got out of the buggy in her father's absence, and two boys got in the buggy and drove it further west on Main street, turned it around and went back to approximately the same place where the father had left it, but the horse was then facing east, the direction from which they had come. The girl got back into the buggy, and shortly thereafter a motor truck operated by appellee's servants turned in from the short street to Main street, coming over the same route the father and daughter had traveled in their buggy.

About the time the truck passed the horse and buggy the horse became frightened, ran off and injured the girl.

The father at the time was on the porch of a nearby residence and saw the transaction. His testimony is that the buggy and horse were at the time standing about thirty steps from where the ice truck turned into Main street; he says:

"These boys (meaning the persons in charge of the truck) were running too fast, running high speed,"

but nowhere in his evidence does he estimate the rate of speed.

He further says:

"They had run right up here and blowed out a lot of smoke."

And further says, speaking of the mare:

"She jumped over this way and when they turned on the splutterer she run off,"

but he is not explicit as to whether the "splutterer" was turned on before or after the truck passed the buggy.

Manifestly the witness' statement that the truck was running too fast and at a high rate of speed is merely an expression of an opinion, unless it be coupled with some estimate of what that rate of speed is, and after he qualified himself sufficiently to make such an estimate. Clearly a person not accustomed to operating or riding in automobiles might consider as too high a rate of speed such a rate as another, thoroughly familiar with automobiles and their operation, would deem a moderate or even a slow rate. In the absence of the facts, therefore, there is no way of saying from this evidence whether the truck was at the time going at a negligent rate.

Likewise it is a matter of common knowledge that smoke necessarily at times comes from the operation of motor vehicles, and the fact that it "blowed out smoke" cannot be deemed negligence.

What exactly is meant by his reference to "that splutterer" we can only guess, but it is a well known and recognized fact that motor vehicles cannot at all times be operated noiselessly. Manifestly he had reference to the accelerator, which causes a noise when it is pressed, or to some other noise made by such motor vehicles. But these things are at times necessary in the operation of such vehicles, and in the absence of special circumstances it cannot be said to be negligence.

The only other evidence bearing directly upon the question of negligence was that of a boy who testified that the truck

"made a kind of fluttering noise just as it got even with the horse's head,"

and that then the horse ran off. He then said:

"It was a pretty loud noise."

This evidence is certainly no more evidence of negligence than that of the father, for it is not to be inferred

from the evidence of either of them that the mare was frightened or acting in a frightened manner before these noises were made.

Another boy who was present stated that the truck made a spluttering noise.

There is nothing in any of the evidence showing that anything unusual was done by the operators of the truck, or that any unusual or unnecessary noise was made which would have caused the horse to run off. Motor vehicles, like other vehicles, have a right upon the public highway, and the mere fact that their operation on the highway causes a horse to run off is no evidence of negligence; and when the evidence here is digested and understood it means nothing more than that while operating a motor vehicle in the usual and customary way a horse was frightened which resulted in an injury to another.

Clearly there is no evidence of negligence, and the lower court properly directed a verdict for defendant.

Judgment affirmed.