## Fry & Kain v. Keen.
## Same v. Costello.

(Decided March 21, 1933.)

(Common Pleas Branch, Fourth Division).

CHARLES W. MORRIS for appellants.

DODD & DODD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Fry & Kain, a contracting firm composed of A. H. Fry and C. T. Kain, were engaged in sewer work in Jefferson county, and used a number of dump trucks for hauling sand and gravel. After dark on the evening of January 24, 1931, Barney Walters, an employee of the firm, was driving one of the trucks along Taylor boulevard. While going up what is known as Gallagher's Hill, at a point just beyond the intersection of Bicknell avenue and Taylor boulevard, the dump truck was run into from the rear by a truck driven by C. W. Keen, who was accompanied by Daniel Costello, and both Keen and Costello were injured.

Keen and Costello brought separate suits to recover for their injuries. The actions were heard together and resulted in a verdict and judgment for Keen in the sum of $5,000 and for Costello in the sum of $500, and the defendants have appealed.

Though Walters testified that he had hung a lantern on the rear of the dump truck, other witnesses say that there was no light on the truck, and if that be true it cannot be doubted that the question of negligence was for the jury.

Appellants' first insistence is that they were entitled to a peremptory instruction on the ground that appellee's speed, considering the condition of his lights, constituted negligence as a matter of law. Appellee testified that he turned on his lights at the Quaker Maid, and Harley Milliner, who passed him, testified that both his lights were burning. It is true that three witnesses, who reached the scene after the wreck, testified that only one of the headlights on Keen's truck was burning; but in the very nature of things they did not know the condition of his lights before the accident. Keen further testified that his lights showed real bright for 30 or 40 feet, but showed objects further than that. On cross-examination he admitted that in giving a prior deposition he was asked if he had good headlights on the truck, and he answered, "Yes," and that in answer to the question, "About how far in front of the truck would they show up substantial objects?" he answered: "They were a little low, but not too low—just about 30 feet, I suppose, on a good level, or 40 feet." It was also developed that in the same deposition he stated that he was driving at a moderate rate of speed, and was going perhaps 15 or maybe 20 miles an hour.

Bryant Atkisson, who, in company with Arley Milliner and Harley Milliner, passed the Keen truck just before the accident, stated that Keen was not driving fast at all, and that they were going about 15 miles an hour. Arley Milliner fixed the speed of their car at between 20 and 25 miles an hour, and Harley fixed the speed at 15 miles an hour. Mrs. Ora Lee McFalls estimated the speed of their car, which was behind the Keen truck, at between 20 and 25 miles an hour, and Ballard McFalls estimated the speed of the same car at 20 miles an hour. It is by no means clear from Keen's evidence taken as a whole that his lights were insufficient to reveal substantial objects 200 feet ahead, and in view of the conflicting evidence as to the speed of the truck he was driving it cannot be said as a matter of law that he was exceeding 15 miles an hour. But more than that, even if he was going slightly in excess of 15 miles an hour, or his lights were not of sufficient power clearly to reveal substantial objects for a distance of at least 200 feet ahead, it was still a question for the jury, whether his rate of speed or insufficiency of his lights, or both combined, so helped to cause or bring about the accident that but for which it would not have happened. It follows that the motion for a peremptory instruction was properly overruled.

Particular complaint is made of the admission in evidence of a statement made by the driver of the dump truck about eight minutes after the accident to the effect that his motor had stopped and the truck was drifting back down the hill. Without stopping to inquire whether this statement possessed sufficient spontaneity and nearness in point of time to be a part of the res gestæ, we deem it sufficient to say that as the court did not submit to the jury the question of obstruction of the road, and the driver, who testified on behalf of appellants, admitted that his motor was missing, we are not inclined to the view that the evidence complained of, even if improperly admitted, was prejudicial to appellants' substantial rights.

Another ground urged for reversal is that the court instructed the jury that it was the duty of Barney Walters, the driver of the truck, "to have said truck *equipped* with a red light on the rear thereof," etc., instead of telling the jury in the language of the statute and of an offered instruction that it was the duty of the

driver "to display at the rear of his truck one lighted lamp showing red," etc. The question for the jury was whether the driver had a proper light on the rear of his truck, and in view of the overwhelming evidence to the effect that there was no light of any kind on the truck, we hardly think that the jury were mislead by the use of the word "equipped" instead of the words "have displayed."

The further point is made that the verdict in favor of Keen is excessive. The evidence discloses that Keen's head was severely cut and bruised, even if his skull was not fractured; that his collar bone was broken, his shoulder blade crushed, and four ribs were broken; that he was unconscious for a week after the accident; that he was confined to his bed for one month and was unable to do any work at all for a period of about 90 days; and that he suffered excruciating pain. In the opinion of a physician Keen could not properly raise his arm, and this condition was permanent. A physician who testified for appellants estimated this disability at 25 per cent. There was no positive evidence that the injuries were not permanent. From this showing it cannot be said that the verdict is excessive.

Finally, it is insisted that, inasmuch as there was no proof showing that Keen's earning power was impaired, the court should not have authorized a finding of damages "for the permanent impairment of his power to earn money." It is the settled rule in this state that the permanent impairment of power to earn money is a necessary result of permanent injury, and, where the injury is permanent, failure to show one's earning capacity or the impairment thereof is not fatal to a recovery. Cumberland Tel. & Tel. Co. v. Overfield, 127 Ky. 548, 106 S. W. 242, 32 Ky. Law Rep. 421; Louisville & N. R. Co. v. Grassman, 147 Ky. 618, 144 S. W. 748; Chesapeake & O. R. Co. v. Bank's Adm'r, 153 Ky. 629, 156 S. W. 109; Chesapeake & O. R. Co. v. Bland, 171 Ky. 430, 188 S. W. 498; Louisville & N. R. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648; Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Kentucky & I. T. R. Co. v. Becker's Adm'r, 185 Ky. 169, 214 S. W. 900.

Judgment affirmed.