## Marsee v. Johnson.
(Decided May 31, 1935.)

616

W. T. DAVIS for appellant.

GOLDEN, LAY & GOLDEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

The appeal is from a $10,000 judgment for personal injuries.

The facts are: The accident occurred about 10 o'clock on the morning of July 24, 1933. Appellee, a young woman eighteen years of age, was on the right-hand side of the highway leading from Middlesboro toward her home at Excelsior. Off the paved portion of the highway was a line of guard posts placed along the edge of an embankment. Appellee, who was carrying some packages, placed one of them on one of the posts and was changing the packages into the other hand. While in this position with her back toward the city of Middlesboro, she was struck in the back by a taxi driven by appellant, and severely injured. In the taxi were two passengers, and the evidence for appellee is to the effect that appellant, without any warning or reason, drove his car off the road to the guard rail where appellee was standing. Appellant's excuse for the accident was that there was a truck coming which crowded him off the road. On the other hand, the two passengers testified that there was no other vehicle on the road closer than 80 to 100 feet to where appellant's car struck appellee.

The first ground urged for reversal is the failure of the court to set aside the swearing of the jury and continue the case after it was brought to the attention of the jury that appellant carried indemnity insurance. The record discloses that while Dewey Wyatt, a witness for appellee, was being cross-examined there was presented to him a written statement which he had signed in the presence of Harvey Highbaugh, and concerning which he was interrogated. On the redirect examination of the witness the following occurred:

"Q. 3. Who took that statement? A. The insurance agent right over here.

"Q. 4. Is this witnessed by Mr. Highbaugh? A. That insurance agent over there. I don't know what his name is. [Defendant objects; sustained; plaintiff excepts.]

"The Court: The jury will not consider that."

Counsel for appellant took no further steps at that time, but after other evidence had been heard made a motion to set aside the swearing of the jury and continue the case, which motion the court overruled on the ground that the evidence that the statement was taken by an insurance agent was excluded. In support of the claim that the court erred in overruling the motion, it is argued that as the witness admitted signing the statement it was wholly immaterial who took the statement, and that the result of the questions and answers was that the attention of the jury was necessarily and forcibly drawn to the fact that it would not be the appellant but the insurance company that would have to pay the amount of any verdict they might return. It is not contended that counsel for appellee were guilty of misconduct in interrogating the witness. They did not ask if appellant carried indemnity insurance, nor did the question propounded suggest or call for the answer made by the witness. Then, too, the owner of a taxicab, engaged in carrying passengers for hire, is usually required to carry indemnity insurance, and where the agent of the insurance company takes a statement from a witness to an accident with the view of using it on the trial, it is not unreasonable to expect that fact to be developed in the presence of the jury (Hedger v. Davis, 236 Ky. 432, 33 S. W. [2d] 310), and where it is inadvertently brought out and there is no bad faith in the

matter, and the court excludes the evidence from the jury, we are not disposed to the view that the court should go further and set aside the swearing of the jury and continue the case (Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. [2d] 768).

Another contention is that the court erred in refusing to permit appellant to have an X-ray picture made of appellee's hip joint. The argument is as follows: The petition did not allege any injury to appellee's hips. Appellant learned from an examination of appellee as if upon cross-examination that the witness, Dr. Foley, had taken an X-ray picture of her spine, and his motion thereafter to see the X-ray picture was overruled. Later on one of appellee's counsel informed appellant's counsel that the X-ray picture did not show any injury to the spine, and that no claim therefor would be made. Still later appellee offered herself for an examination, and counsel for appellant, relying upon the representations made by adverse counsel, informed the physician selected to examine appellee that appellee did not claim any injury to the spine. As a consequence, when appellee presented herself on April 18, 1934, the physician only took an X-ray picture of her shoulder, and appellant did not learn that any claim for injury to her hips would be made until the trial of the case had begun, and it was only after the trial had commenced that appellant was permitted to see the X-ray picture of appellee's hip joint. When all the facts are presented, the showing made by appellant is not quite so strong. The petition alleges injuries to "her head, shoulders, breast, abdomen, legs and other parts of her body." Clearly, this language was broad enough to include appellee's hips. In addition to this, appellant himself had reason to know that a claim for injuries to appellee's hips would be made, for he was present at the accident and testified on the trial that the fender of the machine hit "the left side of her hip." Appellee had already been examined by Dr. Nuckols, who had been selected by appellant for that purpose, and she informed Dr. Nuckols that she was injured "in my back and hips and sides and shoulders and all." In view of these facts, and of the further fact that appellee's counsel did not inform appellant's counsel that no claim would be made for injury to appellee's hips, but only that no claim would be made for injury to her spine, we are not disposed to

hold that the circumstances were such as to lead appellant to believe that no claim would be made for injury to appellee's hips. It follows that the court did not err in not requiring appellee to submit to a second X-ray examination by a physician selected by appellant.

Lastly it is insisted that the verdict is excessive. On the one hand, we have the evidence of the physicians introduced by appellant that appellee's injuries were only slight and were not of a permanent character. On the other hand, we have the following facts: The car which struck appellee weighed about 2,800 pounds and was being driven at the rate of about 25 miles an hour. It struck appellee in the back, passed over her body, and knocked her unconscious. According to appellee, she suffered severely from her injuries and her shoulder and back hurt her now so that she is unable to do any work. According to her physicians, there was a fracture of her shoulder, the process was broken down, and the movement of her arm was seriously interfered with. Another physician found that she had a chronic inflammatory condition of the kidneys, that the cartilage in her hip joint was torn, that as a result thereof she had a decided limp, and that these conditions had grown worse since the first trial and would probably continue to grow worse. There was further evidence that appellee's monthly periods had ceased as a result of the accident and would never be renewed, and that appellee had not only suffered severely, but she had lost in weight, had become very weak, and her general health was seriously impaired. On the whole, we cannot say that the verdict is excessive.

Judgment affirmed. Whole court sitting.