Rose v. Edmonds.

Edmonds v. Rose.

(Decided Dec. 10, 1937.)

J. FRANK DENTON and BURTON FRANCIS for appellant.

MILLIKEN & MILLIKEN and NERGE B. PRITCHETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On July 17, 1935, Lucy Edmonds, an infant about 13 years of age, was traveling on a state highway about 5 miles north of Bowling Green, Ky. She was riding a horse and leading a mule and was on the right side of the highway. A freight truck owned by defendant, W. P. Rose (who resided in Nashville, Tenn.), was traveling the same highway and in the same direction, on its return trip from Cincinnati, Ohio. It was carrying several tons of soap to Nashville, Tenn., its destination. At the point indicated the truck, on a section of straight highway, approached Lucy Edmonds from the rear and collided with the animal she was riding, killing it instantly and throwing the rider to the hard pavement, from the effects of which she sustained severe bodily injuries, producing unconsciousness which lingered for

10 days after she was carried to the hospital. She was in that institution for treatment for something like a month when she was released. Her father, as her next friend, filed this action in the Warren circuit court against defendant, Rose, to recover damages for the injuries sustained by his daughter, which he claimed amounted to $15,750, including an item of $750 for medical and hospital bills.

Defendant answered denying the negligence and coupled with his denial a plea of contributory negligence which was denied by reply thus making the issues. At a following trial there was a verdict in favor of plaintiff for the sum of $5,595, $595 of which was the amount allowed for medical and hospital bills. Defendant's motion for a new trial of that hearing was sustained by the court, because, as appears from his opinion contained in the record, an error was committed by failing to give an instruction on sudden peril, or "sudden appearance" which defendant had offered, but which the court had refused. At a subsequent trial the jury returned the identical verdict that had been rendered by the first jury, followed by defendant's motion for a new trial which the court overruled, and he prosecuted the first appeal in the caption from that judgment. The second appeal is one prosecuted by plaintiff from the order sustaining defendant's motion for a new trial and setting aside the first verdict. Both appeals are taken upon separate records, but they have been consolidated in this court and will be disposed of in one opinion.

Counsel for plaintiff strenuously argue that the court erred in setting aside the first verdict, since, they contend, there was no error committed at that trial; and they cite cases where the successful party in the first trial was the losing one in the second and upon appeal from the last judgment he sought to reinstate the first verdict, all upon the ground that the court improperly sustained the motion for the new trial of the prior hearing. But we have no such case here, since plaintiff was successful in both trials, and, coincidentally, obtained the identical relief in both. It will be perceived that the new trial here under consideration was asked and later granted at the same term of court during which the verdict was rendered. The procedure to obtain it was not one by an independent action, as furnished by the provisions of section 518 of our Civil Code of Practice, and instituted after the adjournment of the term of court

at which the verdict was rendered. In the cases of Christman v. Chess, 102 Ky. 230, 43 S. W. 426, 19 Ky. Law Rep. 1243; Schweitzer v. Irwin's Ex'x, 101 Ky. 401, 41 S. W. 265, 19 Ky. Law Rep. 624; Kennery's Adm'r v. L. & N. R. Co., 51 S. W. 804, 21 Ky. Law Rep. 532; and Mergenthal v. South Covington & Cincinnati Street Railway Company, 104 Ky. 424, 47 S. W. 257, 20 Ky. Law Rep. 622, we held that an order of court sustaining a motion for a new trial, made by the person against whom it was rendered and at the same term of court, was not a final order from which an appeal would lie to this court. But, in the case of Mackenzie v. Salmon, 146 Ky. 616, 143 S. W. 20, and others following it, a contrary practice was declared as applicable to independent actions for a new trial. If the relief sought by plaintiff in them is granted, the defendant therein, or the one in whose favor the attacked verdict was returned, may prosecute an appeal to this court, since such an order, made in that character of independent action, is a final one subject to be reviewed by this court on an appeal therefrom. The new trial complained of by plaintiff in the first appeal in the caption, not being one granted in an independent action filed therefor, is not, therefore, a final order so as to sustain an appeal to this court, and for which reason the appeal prosecuted by plaintiff (being the second one in the caption) is dismissed.

Defendant on his appeal complains of the second trial on these grounds: (1) That the court erred in overruling his motion for a peremptory instruction; (2) alleged incompetent evidence introduced by plaintiff over his objections and exceptions; (3) improper instructions submitted to the jury; and (4) excessive verdict. They will be disposed of in the order named.

1. The disposition of ground (1) requires a brief statement of the facts. Defendant's truck was being driven at the time by one Moore. It had made a trip from Nashville, Tenn., to Cincinnati, Ohio, and on the return trip it was loaded with several tons of Proctor & Gamble soap to be carried to Nashville, Tenn. The driver left Cincinnati late one afternoon and the accident occurred on the forenoon of the next day. He had with him at the time a substitute driver, and the two had picked up a girl in Covington, Ky., who desired to go to Nashville, although she was a stranger to both. The party traveled all night, stopping occasionally for

gasoline and other necessary articles for the operation of the truck, the last stop for that purpose having been made at West Point, Ky. The highway where the accident occurred was straight for a considerable distance each direction therefrom. The father of plaintiff had loaned a mule to his brother who resided a mile or more north on the same highway. The daughter was sent to bring it home and was traveling on a horse nearly 20 years old and perfectly gentle. She was returning south on the highway to her father's home after procuring the mule, which had upon its head a halter by which she was leading it, and she was traveling on her right side of the highway (which was the west side), going south. As she approached the point of the collision the mule became obstreperous and engaged in movements and activities indicating fright. Plaintiff was endeavoring to pacify it, and to assuage its restlessness or fright, which was clearly observable to one approaching from behind for a distance of, perhaps, 300 yards or more, and which was the direction being traveled by the truck. The evidence is contradictory from this point. The witnesses for plaintiff testified that the truck was traveling at the rate of between 30 and 40 miles per hour; whilst the driver of the truck and his substitute along with him (the girl not testifying) stated that the speed was between 20 and 25 miles per hour as the truck approached the point of the accident. The witnesses for plaintiff testified that a tarpaulin covering the cargo of the truck had become loose on its right side from its frontal fastenings and was flapping and making a loud popping noise whilst defendant's same two witnesses testified that they observed no such loosening of the tarpaulin until after the accident, they admitting that it was loose at that time, but insisted that the collision must have produced it.

The plaintiff's witnesses say that the fretful actions of the mule, which may or may not have become frightened from the noise made by the flapping tarpaulin, finally irritated the old horse that plaintiff was riding and he became more or less unmanageable by plaintiff, its youthful rider; that the actions of the two animals apparently got beyond the control of the young rider and the horse moved farther over into the road, perhaps near to its center line, and as thus located the truck struck it from the rear with the consequences hereinbefore stated, the mule in the meantime having jerked

loose from the hold of the infant plaintiff. The various witnesses for the plaintiff say that such activities of the animals first began, all the way from 50 to 150 yards in front of the truck, and which, if believed by the jury (and which it evidently did), clearly indicated the ability of the driver of the truck to observe such conditions long before he arrived at the point of the collision, and to have furnished him ample time and opportunity to regulate the speed of his truck, or to even stop it before reaching the point in the road where it occurred. Also, that if proper lookout observance had been maintained the driver could have easily discovered plaintiff's situation and turned to the left of the animal she was riding (since there was plenty of room therefor) and thus avoided the collision if the proper diligence and care had been exercised. However, defendant's witnesses contradicted the above testimony for plaintiff, and stated that the unruly condition of the animals began when the truck was within about 20 feet of them, and that the horse that plaintiff was riding suddenly appeared in front of the truck when it was too late to prevent the collision, although the driver attempted to do so by turning to his right. If the testimony of the witnesses so testifying for plaintiff was competent, and which we conclude is true, it is clearly manifest that the court properly overruled the motion for a directed verdict in favor of defendant, and for which reason this ground is unavailable.

2. The incompetent evidence complained of consists, first in testimony of some two or three witnesses for plaintiff upon the speed of the truck as it approached the point of the collision. At least one of them had considerable experience in driving automobiles, including trucks. Another one had done but little driving of motor vehicles, but he lived on the public highway, in the yard around which he was seated at the time of the accident, and some 100 yards from it, and had observed on numerous occasions the traveling of such vehicles up and down the highway and elsewhere. He had also ridden in them and it is clear that he was competent to give his opinion as to the speed of the truck after stating what he thought it was. Defendant's counsel in combating the competency of that witness, as well as others, rely chiefly on the case of Teague v. Princeton Ice & Storage Co., 205 Ky. 231, 265 S. W. 611. But in that case there was no fixing by the witnesses of the rate of

speed, they merely stating that it was traveling "very fast." In the course of the opinion it is clearly indicated that a witness possessing the qualifications of those who testified in this case would be competent to give his opinion of the rate of speed at which a motor vehicle was traveling, and which indicated ruling so made in that opinion was strictly followed in this case. The same distinction prevails with reference to the other cases cited and relied on by counsel for defendant.

Another item of evidence complained of under this ground was a statement made by plaintiff's father in response to this question asked him by defendant's counsel on cross-examination: "When Mr. Rose came up to you to talk to you about it (after the accident) you insulted him too, didn't you, and talked very rough to him about it?" The answer was: "No sir, I didn't talk to Mr. Rose one minute, if that long. He come up to the hospital with some insurance man or some other man, or lawyer, one, and talked to the hospital people up there, or Mr. Pritchett. He didn't talk to me more than one minute, I don't think." The record discloses no objection made to the answer by defendant's counsel, nor did he ask for any admonition by the court to the jury to disregard the answer with reference to the "insurance man," as contained in the answer of the witness. However, counsel did move for a discharge of the jury and that the case be continued, which the court overruled.

In the first place it is doubtful whether or not the proper practice was followed because of the failure of counsel to object to the answer, or to ask the court to admonish the jury to disregard the statement. But, waiving that question, the answer was clearly brought out in response to a question propounded by defendant's counsel and it was inadvertently made by the witness in a good faith effort to refute the insinuation contained in the question propounded to him. It bears less evidence of bad faith than was found in the case of Marsee v. Johnson, 260 Ky. 615, 86 S. W. (2d) 299, 300, where in dealing with a similar complaint we said: "Where it [the complained of answer] is inadvertently brought out and there is no bad faith in the matter, and the court excludes the evidence from the jury [on a motion made for that purpose], we are not disposed to the view that the court should go farther and set aside the swearing of the jury and continue the case"—citing the

case of Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. (2d) 768. The trial court, no doubt, would have excluded the statement had counsel made a motion for that purpose; but without doing so he asked that the jury be discharged and the case continued without first seeking an exclusion of the statement of the witness from the consideration of the jury.

Moreover, the answer did not state that any one present at the conversation referred to in the propounded question was an insurance man, since the witness stated that he concluded that the person referred to by him was either "an insurance man, a lawyer, or some other man." The answer was so indefinite as to embody no proof that defendant carried indemnity insurance. It is true that we have held in a number of cases that it is prejudicial error to permit plaintiff in such actions to place before the jury the fact that defendant carried indemnity insurance; and, whenever such facts are intentionally injected into the case in a manner evidencing a bad faith purpose on the part of plaintiff, we have uniformly held that he would not be entitled to the fruits of that purpose, and that any judgment obtained would be set aside for that reason. But on the other hand, we have held that when the fact of the existence of such indemnity insurance is inadvertently injected into the case in the absence of bad faith, with no purpose to profit thereby, the error will be regarded as not prejudicial, and especially so when due objection is made thereto and the court excludes its consideration from the jury. Such exclusion would, no doubt, have been made in this case had steps been taken to procure it. But defendant cannot strengthen this objection by the failure of his counsel in that regard. There are some other minor objections to testimony, but we have carefully considered them and regard them as entirely immaterial. It follows, therefore, that this ground is also without merit.

3. The negligence alleged in the petition was in general terms, it being charged that the servant of defendant in charge of the truck "Drove and operated an automobile truck owned, managed and under the control of said Rose, his agent, servant and employee, in such a reckless and careless manner as to cause same to run into and against the said Lucy Edmonds and the horse she was riding with great force and violence." That general charge permitted proof of any negligent opera-

tion of the truck and, of course, the submission of any such negligence, for which there was sustaining proof, by the instructions. The court, therefore, said this in instruction No. 1: "The Court instructs the jury that it was the duty of the agent and servant of the defendant, Rose, who was operating defendant's truck at the time and place complained of to have said truck under reasonable speed; to drive same on his right hand side of the road, to keep a look out ahead to avoid collisions with other vehicles, persons or live stock on the highway; if necessary, to give notice of the approach of said truck by the sounding of some customary signalling device; in passing persons riding horses going in the same direction as said truck, to turn said truck to the left on approaching said persons riding horses at a reasonable distance before said horse was reached and to drive around said horse to the left so as to make it reasonably safe to pass said horse; in approaching Lucy Edmonds, who was riding a horse and leading a mule, if the driver of said truck saw, or could by the exercise of ordinary care have seen, that said horse or said mule were frightened, or about to become frightened, it was the duty of the driver of said truck to use ordinary care to prevent his truck from further frightening said mule or horse or from colliding with them; to operate said truck in such a manner that the same would not make such unusual or unnecessary noises and not make such unusual or unnecessary motions as to frighten a horse or mule of ordinary gentleness being ridden on the highway; and to use ordinary care to prevent said truck colliding with horses on the highway."

There were other appropriate instructions, of which no complaint is made, relating to other phases of the case. The criticism of instruction No. 1 is twofold, (a) that there was no testimony that the driver gave no signal of his approach to the point of the accident, and the instruction should not have submitted that issue, and (b) that it was error for the court to incorporate in instruction No. 1 this language: "to operate said truck in such a manner that the same would not make such unusual or unnecessary noises," etc., the criticism being that the inserted phrase, from the instruction assumed, under contradictory proof, that the tarpaulin covering the load of the truck was loose and making the described noises while the truck was traveling and before the collision. But we do not interpret the language, when

taken in connection with all of that contained in the instruction, as embodying any such idea. The court intended by it to say and did say that any unusual noises were inhibited and if they were the proximate cause of the fright of the animals, whereby they got in front of the truck, then defendant would be guilty of negligence proximately contributing to the collision, since in such circumstances an approaching driver of an automobile, or truck, should take proper steps to guard against the probable effects of such unusual and unnecessary noises. We do not think the criticism complained of in this objection sufficiently substantial to be meritorious. Neither do we find any merit in criticism (a) of the same instruction, since it is clear that the driver of the truck gave no signal of its approach to the place where the collision occurred.

4. Plaintiff's skull was fractured and she received other severe and painful injuries to different parts of her body. Her nerves were greatly shocked and shattered. She was unconscious for 10 days and knew nothing of what was going on around or about her, being, of course, unable to speak during that time. She was in the hospital, as hereinbefore stated, for some 30 days and when released was in a high state of nervousness, which was but little improved at the time of the second trial. She was compelled to remain out of school for a whole year under direction of her physician and because of her physical impairment. She is now subject to frequent headaches, which was not true before her injury. Her hearing is considerably impaired and her physician witnesses testified that it will probably remain in that condition throughout her life, although there is a possibility of final recovery. They also say that plaintiff will probably overcome her nervousness in time; but that there is also a possibility of an incomplete recovery in that respect. Following the restoration of her consciosuness she underwent considerable pain and her physician and hospital bills amounted to $595, the verdict returned for her physical injuries being only $5,000. While a physician who testified for defendant gave it as his opinion that there would be an ultimate recovery from all of the effects above enumerated, still we are not prepared to say that the verdict of $5,000 for the injuries sustained is excessive. We could cite many cases from this court where much larger verdicts were sustained and where the testimony support-

ing them was no more convincing than that found in this case. Some of them are, Green River Light & Water Co. v. Beller, 197 Ky. 818, 248 S. W. 201; Kentucky Traction & Terminal Co. v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902; and Fry & Kain v. Keen, 248 Ky. 548, 59 S. W. (2d) 3. Many others to the same effect could be cited, but they are of the same tenor, and which is, that in circumstances such as here presented the amount of damages is peculiarly within the province of the jury, and its verdict will not be set aside as excessive, unless it is plainly manifested that it was the result of passion or prejudice. We are not prepared to so hold in this case, and for which reason this ground is also disallowed.

Before closing the opinion we deem it pertinent to add that the duties of travelers on a public highway are not incased in straight jacket molds. They are always required to exercise ordinary care *in the circumstances* of the case, and which, of course, is such care as an ordinarily prudent person would exercise in the same or similar circumstances. Therefore, in some of the cases to which we have referred, it is pointed out that it would be negligent to travel within permissible speed limitations, or to fail to take other precautionary steps in some circumstances, whilst it would not be so in others.

The object of the law always is to exact from the person concerned that degree of care that an ordinarily prudent person would take in the circumstances to avert the danger. In this case, if the plaintiff's witnesses told the truth, defendant's truck approached plaintiff from the rear when the animals in her charge were in a fretful and uncontrollable condition. It was the driver's duty, if he saw or could have seen the situation by exercise of ordinary care in time, to not only have taken the precautions we have discussed, but to have actually stopped his car rather than to risk the most probable danger of collision by continuing his journey and paying no heed to the situation. This record presents a case peculiarly for the determination of the jury under proper instructions of the court, which, we think, was done by the giving of instruction No. 1 above referred to.

Upon the whole case we are unable to say that any of the errors complained of prejudicially affected the rights of the defendant, and for which reason the judg-

ment complained of by his appeal is affirmed; whilst the appeal of plaintiff, for the reasons hereinbefore stated, is dismissed  The plaintiff will recover her costs incident to defendant's appeal, but she will be required to pay all the costs of her own appeal.