Thomas W. RAMSEY, Appellant,

v.

Violet DEATHERAGE et al., Appellees.

Court of Appeals of Kentucky.

Feb. 3, 1961.

Frank V. Benton, Jr., Benton, Benton, Luedeke & Rhoads, Newport, Harry K. Aurandt, Covington, for appellant.

Carl H. Ebert, Newport, for appellees.

MONTGOMERY, Judge.

Violet Deatherage and Bernard Deatherage, her husband, recovered judgment against Thomas W. Ramsey for damages in the respective sums of $5,000 for personal injuries and $1,000 for medical and hospital expense and injury to his car. The injuries were sustained in an auto collision. It is urged that: (1) Appellee Violet Deatherage was guilty of contributory negligence as a matter of law; (2) improper evidence was admitted; and (3) the verdict was excessive.

The cars involved in the collision were a 1951 Ford coupe operated by Ramsey and a 1949 Chevrolet sedan owned by Bernard Deatherage and driven by his wife. There teen-age companions accompanied Ramsey.

The collision occurred on June 8, 1957, about 5 p. m. The weather was clear and dry. The cars collided at or near the intersection of U. S. 27, also known as Alexandria Pike, and Ky. 154, formerly U. S. 27. U. S. 27 extends north and south from that point and Ky. 154 crosses U. S. 27 from the southeast to the northwest at an approximate angle of 30 degrees.

Through the intersection, U. S. 27 consists of two traffic lanes, one northbound and one southbound, with an outer lane, referred to as an apron or spur, on each side for entry and exit to and from Ky. 154. There are "Stop" signs on Ky. 154 at each point of entry onto U. S. 27. Ramsey approached the intersection from the south, traveling in the northbound traffic lane. Violet Deatherage approached the intersection from the south on Ky. 154.

At the conclusion of the introduction of evidence for the plaintiffs and again at the conclusion of the introduction of all of the evidence, appellant moved for a directed verdict, which was overruled. The case is here on a partial bill of evidence.

Violet Deatherage testified that she was traveling northwesterly on Ky. 154 and had stopped in obedience to the "Stop" sign at U. S. 27 preparatory to continuing northwardly on U. S. 27. She saw a car stopped in the northbound traffic lane on U. S. 27 preparatory to making a left turn across U. S. 27 and on northwesterly onto Ky. 154. There was traffic moving south in the southbound traffic lane on U. S. 27. Mrs. Deatherage, driving alone, looked toward the south on U. S. 27 for a distance variously estimated at eight hundred feet and one-quarter of a mile without seeing or hearing any traffic approaching from that direction. As she pulled onto the apron or spur, she continued to look backward toward the south until her car entered a straight course. The car had traveled about fifty to seventy-five feet on the spur and had not entered the northbound traffic lane when it was struck from the rear. She estimated that her car was traveling at a rate of speed less than twenty miles per hour. The car had a manually-operated gearshift and was in second gear.

Pearcy McElfresh, a mechanic, was riding in the front seat of a car driven by his son Ronald. They passed through the intersection traveling south on U. S. 27. At a point first estimated at four to five hundred yards, later changed to five or six hundred feet, south of the intersection, the car in which he was traveling met the car later identified as having been driven by appellant. Pearcy McElfresh estimated the speed of the Ramsey car at ninety miles per hour, "mighty fast." He said that he turned and watched the Ramsey car, that it did not slow up, and that it struck the Deatherage car in a matter of seconds. He said that the Deatherage car was on the spur when it was struck and that it jumped into the air about ten feet.

Ronald McElfresh testified that the car later identified as appellant's was traveling at the rate of eighty-five to ninety miles per hour, "pretty fast," when it passed the car driven by him.

This evidence introduced in behalf of the plaintiffs has sufficient probative value of a fitness to induce conviction in the minds of reasonable men. Accepting it as true for the purpose of this motion and drawing from it such reasonable and justifiable inferences most favorable to plaintiffs as may be drawn, the evidence introduced in behalf of the plaintiffs is sufficient to create a jury issue. Wadkins' Adm'r v. Chesapeake & O. Ry. Co., Ky., 298 S.W.2d 7; Hinton v. Dixie-Ohio Express Co., 6 Cir., 188 F.2d 121. The trial court correctly overruled appellant's motion for a directed verdict made at the conclusion of plaintiffs' testimony.

The consideration of the trial court's ruling on the motion for a directed verdict made at the conclusion of the introduction of testimony is limited, because of the partial record, to the evidence heretofore considered plus the testimony of A. Conkwright, a state trooper, introduced in behalf of appellant (defendant), and the testimony of Daniel Halpin on cross-examination. The latter testimony was introduced by the appellant but was made a part of the record on appeal by designation of appellees. Halpin was one of the occupants of appellant's car.

Conkwright arrived at the scene a few minutes after the collision. He testified

concerning photographs which were taken shortly thereafter. He testified further concerning measurements of the highway, distances, marks, location of the cars, etc., and was permitted to express an opinion that "the left front of the vehicle (Deatherage) was to the left of the expansion joint which separates the traffic lanes and the left rear of the vehicle was just about on the expansion joint." The effect of this testimony would have been to contradict Mrs. Deatherage as to the position of her car on the spur. This would have presented an issue for the jury which would not necessarily have been determinative of liability. On cross-examination, Conkwright said that all of the skid marks of the Deatherage car were on the spur. He also was permitted to give as his opinion that the Ramsey car could have passed to the right of the vehicle waiting in the northbound traffic lane without violating any traffic laws.

On cross-examination, Daniel Halpin, an occupant of the Ramsey car, stated that at a distance of two hundred yards from the place of collision he saw a car stopped in the "southbound travel lane" and saw the Deatherage car partially blocking the northbound traffic lane. He said the road was straight, the view was unobstructed, and there was nothing to prevent the appellant from seeing the same situation. He testified that at that time the Ramsey car was traveling sixty miles or more per hour as it came over a rise, that the brakes did not seem to work, and that the car continued to travel at about the same speed. He said that very shortly before the collision the Ramsey car made a tremendous swerve to the right to avoid the obstructing vehicle in the northbound traffic lane and struck the Deatherage car.

█ In the Wadkins case previously cited, it was held that the court in the exercise of a judicial function must evaluate the evidence to determine whether it has sufficient probative value to present a jury issue. This determination must be made on the whole of the evidence presented by the partial bill of evidence. City of Ludlow v. Albers, 253 Ky. 525, 69 S.W.2d 1051. Construing it most favorably to the opposing party, the evidence presents a strong inference of negligence on the part of appellant. Spencer's Adm'r v. Fisel, 254 Ky. 503, 71 S.W.2d 955; Slusher v. Brown, Ky., 323 S.W.2d 870.

Appellant insists that the failure of Mrs. Deatherage to see his approaching car made her guilty of contributory negligence as a matter of law, relying on Vaughn v. Jones, Ky., 257 S.W.2d 583, and Roberts v. Rogers, Ky., 265 S.W.2d 448. The cases relied on may be distinguished from the instant case because the facts as to speed and distance of appellant's car presented a much weaker case as to the immediacy of the hazard. The plaintiffs' evidence placed the Ramsey car at least five or six hundred feet away. Halpin testified that the car was two hundred yards away. These statements as to distance made it a question for the jury to say whether the Ramsey car was an immediate hazard.

Ordinarily, questions of negligence are to be determined by the jury unless the uncontradicted testimony is such that but one conclusion can be drawn therefrom by fair-minded men. Hogge v. Anchor Motor Freight, Inc., 277 Ky. 460, 126 S.W.2d 877. The evidence is not sufficient to warrant holding that Ramsey's car was an immediate hazard as a matter of law. The instant case is governed by the principles set forth in Farris v. Summerour, Ky., 296 S.W.2d 708, and approved in Gasparac v. Castle, Ky., 330 S.W.2d 111.

█ In the cross-examination of Pearcy McElfresh, counsel for appellant asked him about a written statement given concerning the accident. McElfresh answered, "Yes, sir, two insurance people, I gave it to two of them." Without making any objection, counsel asked the witness twenty-two more questions concerning the statement and its content. On being asked to examine and read the statement, the witness answered, "That's one of the state-

ments I gave to them insurance guys." Counsel for appellant still did not object until counsel for appellees had objected. Then appellant's counsel moved to set aside the swearing of the jury. The motion was overruled. So far as the record shows, the court was not asked to admonish the jury. Appellant insists that it was error to overrule his motion.

The statements made did not identify the insurance men with either party. There was no timely objection made by appellant. The trial court acted correctly. Rose v. Edmonds, 271 Ky. 36, 111 S.W.2d 427; Terminal Transport Co. v. Berry, 6 Cir., 217 F.2d 32.

■ The verdict awarding $5,000 to Mrs. Deatherage is attacked as being excessive. She was shown to have been forty-nine years of age, in good health, and capable of performing the duties of a farm housewife prior to receiving the injuries. Mrs. Deatherage received a comminuted fracture of the left collarbone, fractures of the left third and fifth ribs, and contusions of her face and forehead.

Surgery in setting the collarbone was necessary in order to insure adequate healing, relief of discomfort, and a more satisfactory cosmetic appearance. By an operation on June 12, 1957, the collarbone fracture was treated by reduction and fixation of a wire approximately one-sixteenth of an inch in diameter by insertion in the marrow cavity or central portion of the bone. The wire "was drilled out toward the shoulder so that it eventually emerges through the skin in the back part of the shoulder." The remaining wire was clipped so that the skin could heal over it. The wire was removed on August 26, 1957, by pulling it out with pliers.

Appellant was in the hospital eleven days and was able to be up and around thereafter. The rib fractures normally would have healed in about six weeks. The collarbone fracture prevented her from working for two months. Her disability lessened thereafter and she was expected to return to normalcy in fifteen to seventeen months from the time of the accident. No permanent disability was expected, according to her doctor. There was no claim for loss of earning power. Her husband recovered judgment which compensated for hospitalization and medical expense.

The determination of damages is a difficult problem. Each party, by citation of cases, has sought to sustain his position that the award of damages is excessive or should be sustained, respectively. Of course, no two cases are exactly the same. In Williams v. Larkin, Ky., 268 S.W.2d 394, 397, it was said, " * * * We are compelled to rely upon the somewhat nebulous rule that an award will not be set aside as excessive unless it is so disproportionate to the injury as to strike the mind at first blush that it was the result of passion and prejudice. * * * "

This rule was approved in Marcum v. Hedger, Ky., 303 S.W.2d 558, 562, wherein a $9,000 award was sustained as not being excessive. Following that rule, and to quote from the Marcum case, " * * * we do not immediately react with the impression that the damages are outrageous, extravagant or exorbitant, such as could have been granted only as a result of passion or prejudice." The award of $5,000 to Mrs. Deatherage was not excessive.

Judgment affirmed.